# *Ex parte* Brown.

### *Motion and Petition before Supreme Court for Mandamus.*

1. *Consolidation of suits concerning the same property, pending in same court.* Where two or more suits are pending in the same chancery court, asserting conflicting rights in the same property, and the facts of each case need to be ascertained before the rights of any can be definitely settled, they should be consolidated that they may be heard together; or, if that can not be done, the suit involving the more important questions ought to be first determined, and the hearing of the other stayed until such determination.

2. *Same; practice in disposing of such suits.*—The parties interested should call to the court's attention the order of disposing of such suits, by appropriate and timely motion. And though one of the cases precedes the other, the chancellor may, without partiality, decline to proceed with it until the other cases are brought to a hearing, if thereby injustice would be done other complainants.

3. *Prohibition; when does not lie.*—The writ of prohibition does not lie against a court or judge, except where there is no jurisdiction, or, there being jurisdiction for a particular purpose, where such jurisdiction is transcended.

4. *Same.*—Whether or not the statutory lien given in favor of the State to secure bonds endorsed under the internal improvement aid law, can operate in favor of a holder of such bonds, and entitle him to be subrogated to such lien, is a question that can be decided in no other than a chancery court, and if the chancellor commits error in a decree thereon, it is not to be revised or corrected by a writ of prohibition.

5. *Mandamus; supersedeas.*—Mandamus is not a revisory writ, and can not

VOL. LVIII.

be legally employed to prevent the execution of an erroneous decree; this is the office generally of a writ of supersedeas.

6. *Execution of decree; may be temporarily restrained.*—A chancellor may, upon application to him in a particular case, restrain, temporarily, the execution of his decree, until the determination of some matter to be affected by it shall be first obtained, when justice between the parties would be thus promoted. The fact, as in this case, that the property was in the hands of the court through its receiver, would be a good reason for fixing more lenient terms upon which such stay is granted.

7. *When and for what a party defendant may come in after final decree.* After final decree in a foreclosure suit by a mortgagee against the corporation, the court will not give a stockholder leave to become a party defendant, and allow him to make answer and defense; but he might be allowed to be made a party for the purpose of allowing him to prosecute an appeal.

HERNDON & SMITH, BROWN & HOGUE, SMITH & ROULAC, for WILSON R. BROWN.

W. M. BROOKS, for D. LUDDINGTON.

MORGAN, LAPSLEY & NELSON, for N. B. FORREST.

No briefs came to Reporter.

MANNING, J.—Petitioner is a stockholder of The Selma, Marion and Memphis Railroad Company of Alabama; and his petition, and the exhibits thereto, represent that there was a corporation of the same name in Mississippi, and another of the same name in Tennessee; that proceedings were taken in March, 1871, by persons claiming authority to do so, to consolidate the three companies into one; which proceedings were legally ineffectual and invalid; that certain persons, who were at that time elected and appointed to constitute and be a board of directors and president and other officers of the consolidated company of the same name, had taken possession of the railroad and other property of the Alabama Company, and proceeded in the construction of its railroad and the conduct of its business, as part of the railroad property and business of such consolidated company, with a line of operations extending from Selma, Alabama, through the State of Mississippi, to Memphis, in Tennessee; that in the prosecution of this enterprise, said board of directors and the president (N. B. Forrest, of Memphis,) caused to be issued a large amount of bonds, and had undertaken to secure the payment of them by a mortgage trust deed of all the present and future property of said supposed consolidated company, executed to trustees; which mortgage and bonds, bearing date March 17, 1871, was called the "first mortgage" and "first mortgage bonds" of The Selma, Marion and Memphis Railroad Company, and were

[Ex parte Brown.]

outstanding in the hands of holders, who asserted, by virtue thereof, a mortgage lien upon the railroad and other property, which petitioner insists belong to the Alabama corporation alone. It further appears that there was issued, under date of September 1, 1869, a series of bonds of the company, to the amount of $16,000 per mile of completed road, with 'the endorsement of the State of Alabama, purporting to be by authority of "an act to establish a system of internal improvements in the State of Alabama," approved February 19, 1867, and an act amendatory thereof, approved September 22, 1868, by which acts, called the "State aid law," it was provided that the State should have a first lien upon the railroad, and its appurtenances, of any company whose bonds the State should endorse, to indemnify it against loss; and that a large amount of these bonds were also outstanding, held by persons who asserted a right of recourse against the Alabama company and its property therefor.

The petition further sets out that certain judgment creditors of the Alabama company filed a bill—that of T. T. May and others, (February 8, 1875,) on behalf of themselves and other creditors, against each of the three State companies and the consolidated company aforesaid, and against N. B. Forrest, as holder of some of the bonds aforesaid, and other holders of such bonds,—in the chancery court of Perry county—to contest the validity of said supposed consolidation, and of the said first mortgage and first mortgage bonds, and of the State indorsed bonds,—alleging that the latter were illegally issued,—and denying that any of the bonds created a lien in favor of the holders upon the railroad property. The bill charges that the railroad company is insolvent, and prays that it be decreed that no lien exists in favor of the holders on its property, &c.; that the property be sold to pay debts of complainants, and that a receiver be appointed to take possession of and care of the property in the meantime. A receiver was appointed, upon the company having filed an answer acknowledging its insolvency and inability to proceed in the construction of the road. To this bill, Butterfield & Co. and others became parties defendant, answered and filed a cross-bill, setting up that they were owners of a large amount of the State endorsed bonds, claiming for them, under the statute, a first lien on the railroad property in favor of the State, and that they were, by subrogation, entitled to benefit of this lien to pay a large amount of past due coupons for interest on the bonds—and praying a sale of the property to pay them. It prayed also that Fawlkes, the receiver, be continued in the meantime in possession of the property.

[Ex parte Brown.]

Petitioner further shows that he, Wilson R. Brown, as stockholder of the Alabama company, on behalf of himself and all other stockholders, filed his bill in the same court March 21, 1876, against all the companies aforesaid, and against N. B. Forrest and others, as holder of first mortgage bonds, and Butterfield & Co. and others, as holders of State endorsed bonds, and other persons,—in which he also alleged that there had been no legal consolidation of the three State companies—that the first mortgage bonds were not valid against the Alabama company and property, and that the State endorsed bonds were illegally issued and created no lien on said property. He charged also that the holders of the bonds of both classes were scheming and combining to sell the road and property and get possession of it, to the detriment of other just creditors and the stockholders; that if this were prevented, all just debts could be paid, as stockholders desired; and that Fowlkes, the receiver, was managing the property advantageously; wherefore, he prayed continuance of the receiver; that the bonds and mortgage be declared void and cancelled; that it be decreed there was no lien for the endorsed bonds, and that it be ascertained who the just creditors are, and that they be paid, &c.

To this bill, too, Butterfield & Co. and others, filed answer and cross-bill, setting up their claims as holders of the State endorsed bonds.

The petition further alleges that, while these causes and cross-causes were pending, one D. Luddington, claiming to be holder of a large amount of the State endorsed bonds, including the same identical bonds of which Butterfield & Co. and others, in said causes, claimed to be holders, and which were obtained from them by Luddington, with full and positive knowledge of the litigation pending concerning the same, filed his bill for himself and other creditors, on the sixth of September, 1877, in the same chancery court of Perry county, against The Selma, Marion and Memphis Railroad Company of Alabama, as sole defendant, and therein averred that he was holder of over 400 of the 600 State endorsed bonds which that company had issued under the "State aid acts" aforesaid; that by said acts a lien was created in favor of the State on the railroad and other property and franchises of the company for the payment of the bonds and interest; that interest on said bonds, due by coupons, had accrued to a large amount, and neither the company nor the State had paid the same; and that by reason thereof complainant and other holders of said State endorsed bonds, were subrogated to the benefits of the lien created by the statute in behalf of the State. But the bill

makes no mention of any consolidation of this corporation with those of other States, or of the execution of the mortgage and bonds aforesaid; or of the pendency of either of the other causes aforesaid, or of the fact that the railroad and property were in the hands of a receiver of the court in such causes, or any other cause. It alleges, though, the insolvency of the company, and prays for a sale of the railroad and other property of the company, and of its franchises, for the payment of the amount due on said State endorsed bonds, and for the appointment of a receiver.

Petitioner further complains that the person on whom this bill was served as president of the company, in order thereby to bring it into court, was not in fact president of the company, but had been elected and had acted as an officer of the supposed consolidated company, and insisted that it had been lawfully and properly constituted, and its acts were valid; that in consequence of his omission to do anything in the premises, no defense was made to the suit of Luddington; that a decree *pro confesso* was taken therein against the company immediately after the expiration of the thirty days allowed by law for answering the bill, all without the knowledge of or notice to petitioner; that at an early day of the next term of the court, which continued only a few days, and was held within a short time afterwards, and while the other causes aforesaid were pending in said court, the cause of Luddington was submitted to the court upon the decree *pro confesso* for a final decree; and that a decree was thereupon shortly afterwards rendered declaring the plaintiff entitled to relief, and ordering a sale of the railroad, other property and franchises of the said Selma, Marion and Memphis Railroad Company of Alabama, at a short day, without petitioner having had such notice or knowledge of the proceedings as enabled him to be advised what course he ought to pursue, or how he should intervene to protect his interests; and that thereby the property is about to be disposed of and the proceeds distributed before the issues presented in the causes aforesaid can be determined.

He further complains that his petitions to the chancellor for a delay of the sale, until the decision of the court can be had in said causes, and that he be allowed to become a party defendant to the cause of Luddington, to enable him to bring the decree of the chancellor into this court by appeal, have been refused.

Wherefore, he prays a writ of *mandamus*, or some other process, from this court to the chancellor, to prevent the sale ordered, until the questions in the other causes be decided, or for other relief.

Many other matters are embraced in the petition and the pleadings therein referred to, of which we take no notice because they can not be considered on this motion.

. We have omitted, also, reference to any matter on either side which relates simply to motives imputed or disclaimed, for the reason that in a proceeding of this sort we have nothing to do with the motives, real or supposed, of those concerned.

1.  Where there are, in the same chancery court, two or more suits in which different creditors, or creditors and others, severally claim interests adversely to each other in the same property, and the facts upon which the rights of each depend need to be investigated, before the rights of any can be definitely settled, there should be, ordinarily, a consolidation of the causes when that is possible, to the end that they may be heard and decided together, or if that can not be effected, one or more of them should be stayed until a determination shall be reached in another, or to the others. And when such a stay is ordered, the cases involving the more important questions upon the determination of which the rights of the respective contestants chiefly depend, ought to be first considered.—1 Dan. Ch. Pl. & Pr. 4 ed. 797–8.

The property involved in these controversies was already in the possession of the court, by its receiver appointed in one of the other cases, to abide the decree of the chancellor in it, and the question of the validity of the bonds belonging to the class of those of which Luddington was the holder, and of the existence or not of a lien on the property, was put in issue therein. Ordinarily, therefore, those causes, or one of them, ought to have been first heard. As was said by Lord Chancellor REDESDALE, in an interesting case concerning the practice in equity: "It is much more important to attend to the general administration of justice in this court, than to the interests of any particular parties." *Largan v. Bowen,* 1 Sch. & Lef. 298.

2.  These matters of practice, are generally decided upon motions made by the parties in interest, whose duty it is to call the attention of the chancellor in due time to them. Though if it appear that the other parties concerned were taken by surprise, and equity required a fuller investigation than could be had in the suit before him, it could not be regarded as evincing any lack of impartiality in the chancellor if he declined to proceed in that suit, even after it was submitted, until the others could, by due diligence, be brought to a hearing. The principle is something like that of a case in which it is found that other parties ought to be made to a suit to enable the court to settle all the equities,

in which event it refuses to proceed until they are brought in.

We have explained only what is the proper practice in a case supposed. In the present instance, no motion was made on behalf of petitioner for a consolidation of causes, or stay in any; and the chancellor proceeded to render his decree in the Luddington suit, announcing what it would be on the day after submission of the cause, and putting it in form several days afterwards. Whether any one is to blame for the decision of this case in advance of the others, and if so, who? are questions with which, on this motion, we have nothing to do. A decree of the court has been rendered, deciding that Luddington was entitled to the relief he prayed for, ordering a sale of the railroad and all other property of the company, and its franchises, and ordering an account to be taken of the debts with which it is chargeable. The question for us to decide is, whether or not petitioner is entitled to the relief he prays in avoidance of this decree.

3–4. The writ of prohibition, which has been asked for, is granted against a court or the judge thereof, only to prohibit its proceeding in a matter of which it has no jurisdiction—that is, when the cognizance of it is drawn from the tribunal to which it belongs, *ad aliud examen,* or, when the court having jurisdiction for a particular purpose, transcends the limits by which it is circumscribed. In the present instance, it has been argued that the statutory lien in favor of the State could not operate in favor of Luddington, or that he was not entitled to assert it, and that the chancellor had, therefore, no jurisdiction. But whether Luddington was entitled to be subrogated to the lien of the State was one of the questions in the case, and a question which could be judicially decided in no other than a chancery court. It was a proper subject of inquiry in that forum only. And if the chancellor committed error in his decree, it is not to be revised or corrected by a writ of prohibition.

5. For like reasons, it is not a proper case for the writ of *mandamus.* This is not a revisory writ, nor can it be legally employed to prevent the execution of a decree which is complained of as erroneous. This is the office, generally, of a writ of *supersedeas;* which is to be obtained in the mode pointed out by law.

6. It is not, however, beyond the power of a chancellor, upon application to him in a proper case, to restrain, temporarily, the execution of his decree until the determination of some matter to be affected by it shall be first obtained, when justice between the parties would be thus promoted. Of course, the fact that the property is in the hands of the court, would be a good reason why the terms upon which

such a stay is granted should not be so onerous as to prevent relief.

7. The chancery court having jurisdiction of the matter, and having rendered a decree in the cause, the question of error or not in the decree can be considered by this court only upon an appeal to it. And if the decree be interlocutory only, as was said of the decree for Luddington, on one side or the other in argument at the bar, application for a reconsideration of it should be first made to the chancellor.

It is erroneously set forth in the petition, that petitioner had made application to the chancellor to be made a party to the cause of Luddington against the company to enable him to appeal from the decree. The application really made after decree rendered, was for an order by which petitioner should be made a party defendant to the cause, and to file an answer and make defense in the court below; which application was properly denied by the chancellor. This could not be done after a final decree, and the expiration of the term. *Ex parte Branch & Sons*, 53 Ala. 140.

The motion of petitioner must be overruled; the former order of this court restraining the sale be set aside, and the petition be dismissed at the costs of petitioner.