584                    SUPREME COURT                    [Nov. Term,

[Leftwich Lumber Co. *et al.* v. Florence Mutual Building, Loan &
Savings Association.]

# Leftwich Lumber Co. *et al.* v. Florence Mutual Building, Loan & Savings Association.

*Bill in Equity to establish the Priority of Mortgage Lien over Material-man's Lien, and to enjoin Judgment.*

1. *Determination of establishment of mechanic's and material-man's lien; judgment declaring lien not considered against complainant who was not a party.*—On a bill by a mortgagee to establish the priority of the lien of his mortgage over mechanics' and material-men's liens and to enjoin the enforcement of the judgments declaring their said liens, recovered in actions to which complainant was not a party, in determining whether the several mechanics' and material-men's liens relied on by the respondents were perfected by appropriate proceedings in the probate court so as to become valid charges upon the property involved in the litigation, the judgments, previously recovered by the respondents declaring their liens and condemning the property to their satisfaction, can not be considered; since the complainant was not a party to those actions and can not be bound by the results reached in them.

2. *Mechanic's and material-man's lien; assignment of claim carries lien for its enforcement.*—Where a mechanic or material-man makes a valid and efficacious assignment of the whole, or a part, of his claim against the owner of property for work done or material furnished, for which a lien existed in his favor, such assignment, under the statute (Code, § 3047), carries with it the assignment of the lien for the enforcement of the claim; and the assignee becomes invested with all the rights of the original holder of the lien, and is entitled to all his remedies to enforce them.

3. *Same; sufficiency of statement of account.*—The statute, (Code, § 3022), which requires, for the perfecting of a mechanic's or material-man's lien, that "a just and true account of the demand secured by the lien, after all just credits have been given," must be filed in the office of the judge of probate, does not demand an itemization of the indebtedness; and a statement of the demand filed by the assignee of a material-man's claim, in which it is stated that the amount claimed was for material furnished for building the house sought to be subjected to the lien, and that the owner had admitted the correctness of the claim by accepting the assignor's order for that sum and specifying that it was due for such materials, is sufficient to perfect the lien asserted.

4. *Same; sufficiency of verification of statement of claim.*—Where the
statement filed by a mechanic or material-man in the office of the
judge of probate to perfect his lien is verified by one who swears he
has personal knowledge of the matters and things therein stated, and
they are true to the best of his knowledge and belief, such verifica-
tion is sufficient, under the statute (Code, § 3022), even though the
affiant had no personal knowledge of the facts stated.

5. *Same; when lien perfected.*—When the statement of a mechanic's
or material-man's claim filed in the office of the judge of probate for
the establishment of a lien upon certain described property is suffi-
cient in form and substance, and the verification of such statement
is by a person who swears that he has personal knowledge of the truth-
fulness of the facts stated therein, the lien is thereby perfected and
becomes at once a valid charge upon the property described for the
amount of the claim, if the statement itself is true, whether the
person who made the verification had personal knowledge of the facts
stated or not.

6. *Same; claim for material for two houses, can not be enforced when
statement does not show what is due on each house.*—Where a material-
man claims a lien for materials furnished for building two houses on
separate lots, built under separate and distinct contracts, and the
statement of his claim filed in the office of the judge of probate does
not show what part of the gross amount claimed was for materials
used in the building of each separate house, such statement is wholly
bad and inefficacious to fix a lien upon either of the houses.

7. *Same; lien can aot be enforced against one house for gross sum due
for materials for two houses built under separate contracts; right of mort-
gagee.*—Where a material-man furnished materials for building two
houses on separate lots, which were built under separate and distinct
contracts, the gross sum for the materials so furnished can not be
collected by the enforcement of a lien against one of the houses and
the lot it is built on ; and as against a mortgagee of such house and
lot the lien can not be enforced, even though the owner, in a suit
against him by the material-man, consented to a decree adjudging
said sum to be a lien upon said house and lot and ordering the same
sold in satisfaction thereof.

8. *Same; acceptance of note from owner for amount claimed; no waiver
of lien.*—The acceptance by a material-man of the note of the owner
for the amount due for materials furnished for his building, payable
within the time allowed for filing a statement of the claim in the
office of the judge of probate, preparatory for the establishment of a
lien, is not a waiver of the material-man's inchoate lien.

9. *Same; stay of execution on judgment establishing lien does not
destroy such lien.*—Where, in a suit for the enforcement of a mechanic's
or material-man's lien, there is a personal judgment against the
owner and order of condemnation of the property, but there is em-
bodied in the judgment an agreement to suspend the issue of execu-

tion for a certain time, such stay of execution does not destroy or affect the lien of the mechanic or material-man.

10.  *Same; priority of mortgage lien; burden of proof; sufficiency of evidence.*—Under the provisions of the statute, (Code, § 3019), the lien of mechanics and material-men on the land on which the building is situated is superior to the lien of mortgages on said land which are executed after the commencement of the work on the building or improvement; and on a bill filed by a mortgagee to have his mortgage lien on a certain lot declared superior to the lien of mechanics and material-men, claimed for work done upon and materials furnished for the building erected on said lot, the burden of proving the commencement of the work prior to the execution of the mortgage is on the defendant, who claims said mechanic's and material-man's lien ; and where the testimony of such lienor was that the work was commenced before, and the testimony of the owner and mortgagor of the lot was that it was not commenced until after the date of the execution of the mortgage, the burden resting upon the lienor is not discharged, and such evidence justifies the finding that the mortgage lien is superior to that of the mechanic and material-man.

APPEAL from the Chancery Court of Lauderdale.

Heard before the Hon. THOMAS COBBS.

The bill in this case was filed on June 21, 1890, by the appellee against the appellants.   In addition to the facts stated in the opinion, the following facts were disclosed :

On the 29th day of April, 1889, T. J. Ross executed to the Florence Mutual Building, Loan & Savings Association a mortgage on a certain lot in the town of Florence, Alabama, to secure a loan made to him by said association of nine hundred dollars.   On June 8th, 1889, he executed a second mortgage on the same property to the said association to secure an additional loan of $750 made by the association to his wife ; and on September 16th, 1889, he executed a third mortgage to the said association on the same property to secure an additional loan of $900 to one F. S. Mallory.   The note which was given to evidence the first of these indebtednesses was signed by said T. J. Ross ; the note for the second loan was signed by Alice E. Ross, T. J. Ross expressing thereon his written consent for his wife to execute said note ; and the note for the third loan was signed by F. S. Mallory and T. J. Ross.   The evidence of Ross shows that the money was borrowed for the purpose of building a house on the lot conveyed in the mortgage, and was so used.   The mortgage executed on April 29th, 1889, was

recorded on May 1st, 1889, and four hundred dollars of
the borrowed money was on that day paid over to the
said T. J. Ross. Ross contracted with Alliger & Golightly
to build the house on said lot on April 20th, 1889 ; but
the exact date of the commencement of the building
under said contract was a disputed question, and the
evidence in reference thereto was in direct conflict.

The facts in reference to the filing of the claims of
mechanics' and material-men's liens by Alliger & Go-
lightly, the Leftwich Lumber Company, from whom
much of the material used in the construction of said
house was obtained, and by William Willer, from whom
other material was obtained, are sufficiently stated in
the opinion.   On March 8th, 1880, a consent judgment
was entered in the circuit court of Lauderdale in favor of
the Leftwich Lumber Company for $962.92, being the
amount of the order, referred to in the opinion, and an
attorney's fee, $75, stipulated for in the note given to the
Leftwich Lumber Company by Ross.   This judgment
established the lien sought to be obtained by the suit;
and also contained an order staying the issue of an exe-
tion thereon for sixty days.

The purpose and prayer of the bill are also stated in
the opinion.   The priority of the mortgages executed to
the complainant, The Florence Mutual Building, Loan
& Savings Association, is asserted in the bill, both on
account of the priority as to the time of the execution of
said mortgages, and for alleged irregularities in the lien
claimed by the material-men, and also on account of al-
leged defects in the judgments and decrees.   The alleged
defects in the judgment and in the foundation of the lien,
by which the bill claims that the judgment is void, may
be thus summarized :   (1.) That the statement for the
lien, filed in the office of the judge of probate, did not
contain a just and true account of the demand, which
was alleged to constitute the lien on the building and
lot.   (2.) That no itemized statement of the account
was filed in the statement for the lien.   (3.) That neither
the contract, nor any of its items, for the building of the
house between Alliger & Golightly, the contractors, and
Ross, the owner, were set forth in the said statement of
the lien.   (4.) That the statement of the lien is not
verified by a person having personal knowledge of the

facts, and as the statute directs and prescribes. (5.)
The judgment enforcing the lien embraces an attorney's
fee, which was included in the note made by Ross to the
Leftwich Lumber Co. (6.) The judgment contains a
stay of execution for sixty days. (7.) J. B. Leftwich,
who verified the statement for the lien filed in the pro-
bate office, did not have personal knowledge of the facts
stated in said statement. (8.) The Leftwich Lumber
Company waived and relinquished whatever lien they
may have had, by taking the note from Ross, and by
judgment thereon.

On the final submission of the cause, on the pleadings
and proof, the chancellor decreed that the complainant
was entitled to the relief prayed for. The respondents
prosecute the present appeal, and assign this final decree
as error.

Thos. R. Roulhac and Paul Hodges, for appellant.
1. The statement of the claim filed by the defendants in
the office of the probate judge was sufficient to perfect
their lien. The words, "a just and true account of the
demand," mean no more than a true and intelligible
statement of the demand, a correct description of it as it
then stands, with the credits on it, if there are any. It
is not essential to the validity of the statement for the
mechanic's lien to specify the items of the account. The
statute in respect to the account was complied with in
this case.—Jones on Liens, § 1404; 15 Amer. & Eng.
Encyc. of Law, 139, 142; Phillips on Mechanics' Liens,
§ 352; *Pool v. Wedemeyer*, 56 Texas, 287; *Young v.
Lyman*, 9 Pa. St. 449; *Manly v. Downing*, 15 Neb. 637;
*Heston v. Martin*, 11 Cal. 41; *Ricker v. Joy*, 72 Me. 106;
*Hilliker v. Francisco*, 65 Mo. 598; *Lonkey v. Wells*, 16
Nev. 271; *Reed v. Boyd*, 84 Ill. 66; *Trustees v. Young*, 2
Duvall (Ky.) 582.

2. The verification of the statement of the claim filed
in the office of the probate judge complied with the stat-
ute.—Code, § 3022. The affiant swore that he had per-
sonal knowledge of the truthfulness of the facts contained
in said statement; and in this respect the present case
is distinguished from the case of *Globe Iron Roofing &
Corrugating Co. v. Thacher*, 87 Ala. 458.

3. By the order given to the Leftwich Lumber Com-

[Leftwich Lumber Co. *et al.* v. Florence Mutual Building, Loan &
Savings Association.]

pany by Alliger & Golightly, which was accepted by
Ross, so much of the claim of Alliger & Golightly as was
contained in that order was assigned to the Leftwich
Lumber Co., and such assignment carried with it the
right to enforce the claim of the material man's
lien.—Code, § 3047;  2 Paige, 289;  *Atty. General v.
Con. L. Ins. Co.*, 27 Amer. Rep. 55;  *Harvin v. Galluchat*,
13 Amer. St. Rep. 671;  *Mandeville v. Welch*, 5 Wheat.
286;  *Bank v. Miller*, 77 Ala. 172.

4. The determination of the question, as to whether
the lien of the defendants was superior to the lien of the
mortgages, depends largely upon the facts of the case,
so far as the priority in point of time is concerned.  The
contractor's right began when the work was commenced
under the contract.  It then became vested, to be per-
fected when the work was completed.—15 Amer. & Eng.
Encyc. of Law, 82;  *Young v. Stoutz*, 74 Ala. 577;  *Welch
v. Porter*, 63 Ala. 225;  Phillips on Mechanics' Liens,
§§ 216-218.

5. The taking of the note from Ross was not a waiver
of the defendant's lien.  The acceptance was but a mode
of transfer of the original contractor's lien to the Left-
wich Lumber Co., and was not taken in payment of an
antecedent debt.—*Lane & Bodley Co. v. Jones*, 79 Ala.
161;  *McMurray v. Taylor*, 30 Mo. 263;  *Miller v. Moore*, 1
E. D. Smith, 739;  Phillips on Mech. Liens, (2 Ed.),
§§ 276, 283.

6. The judgment recovered by the defendants, who
claim the lien in this case, did not defeat the lien claimed
by them, because complainant was not a party to this
suit.  Such judgment, as between the complainant and
the defendant, is simply as any other judment would be
as between other parties.—*Young v. Stoutz*, 74 Ala. 577.
Such judgment establishes the relation of debtor and
creditor between the lienors and Ross, and as to the lat-
ter all the facts necessary for the establishment of the
liens claimed;  and said judgment can not be collaterally
assailed except for fraud or collusion, or want of juris-
diction of the court rendering the judgment.—*White v.
Crow*, 110 U. S. 183;  *Pickett v. Pipkin*, 64 Ala. 520;  1
Herman on Estoppel, 413, § 319;  *Thompson v. Tolmie*,
1 Pet. 157;  *Galpin v. Page*, 18 Wall. 364;  *United States
v. Arredondo*, 6 Pet. 709;  *Weigley v. Matson*, 8 Amer. St.
Rep. 335;  *Estate of Hanika*, 21 Amer. St. Rep. 907.

[Leftwich Lumber Co. *et al.* v. Florence Mutual Building, Loan & Savings Association.]

7. That the effect of our statute, as to persons not made parties is simply to leave open the question of priority between the lienor and another incumbrancer, and to make the judgment in the circuit court like any other common law judgment, and not a judgment *in rem*, is fully sustained by authorities elsewhere.—*Diddy v. Risser*, 55 Iowa 701 ; *Evans v. Tripp*, 35 Iowa 371 ; *Brooks v. Railway Co.*, 11 Otto 443 ; *Jones v. Hartsock*, 42 Iowa 147 ; *Gamble v. Voll*, 15 Cal. 507; 15 Amer. & Eng. Encyc. of Law, 171 and note ; Phillips on Mechanics' Liens, (2 Ed.) , § 395.

8. The mortgagee in this case is in privity with the owner Ross and bound by the judgment for that reason. *State v. Eads*, 15 Iowa 114 ; *Mathes v. Cover*, 43 Iowa 513; Jones on Liens, § 1570, pp. 437-8 ; Phillips on Mechanic's Liens, 716. And even if complainant could question the validity and conclusiveness of the judgment, it could not raise a question as to those requirements of the statute designed for the protection of the owner.—*Brooks v. Railway Co.*, 11 Otto. 443.

SIMPSON & JONES, *contra*.—1. The fact that defendants, Willer and Leftwich Lumber Company, have judgment against Ross can avail them nothing. The statute itself provides, and such would have been the law without the statute, that persons not made parties are not bound by such judgments. The case then must be tried without regard to the judgments.

2. The order to the Leftwich Lumber Company did not transfer the lien of Alliger & Golightly for the amount of the order, but extinguished the lien to that amount. The lien claimed by the Leftwich Lumber Company was claimed by virtue of the order given on Ross, and the note of Ross given in part for the amount of said order. The taking of the note does not pay the original debt, but suspends the right of action until the maturity of the note.—Phillips on Mechanics' Liens, § 275 ; *Lane & Bodley Co. v. Jones*, 79 Ala. 161. The taking of the note is conditional payment. The original claim is dormant as if paid, unless revived by failure to pay the note at maturity.—*Day v. Anderson*, 39 N. J. L. 204. If the note is not paid at maturity, the party may proceed on the original indebtedness to enforce his lien, if not bar-

red, but he must produce in court and deliver up for cancellation the note, or account for its absence.—Phillips on Mechanics' Liens, §§ 275-277.

3.   The verification of the statement filed for the lien in the office of the judge of probate was not sufficient, and for this reason the lien must fail.—*Globe Iron Roofing & Corrugating Co v. Thacher*, 87 Ala. 458.

4.   If the Leftwich Lumber Company acquired the lien by reason of the filing of the claim and the suit thereon, its agreement with Ross to stay the execution of the judgment for sixty days subordinated the lien to that of the complainant in this case.—1 Brick. Dig., 900, § 148.

McCLELLAN, J.—This bill is filed by the Florence Mutual Building, Loan & Savings Association against the Leftwich Lumber Co., Alliger & Golightly, William Willer, T. J. Ross, Alice E. Ross and F. S. Mallory. Its purpose is to have three certain mortgages, two of which were excuted by T. J. Ross and Alice E. Ross and the third by Ross and wife and said Mallory, covering a lot in the town of Florence, declared a first lien thereon as against asserted mechanics' and material-men's liens of the several other defendants, to enjoin judgments which the Lumber Co. and Alliger & Golightly had obtained against Ross, who was the owner of the lot, with condemnation of the lot to their satisfaction, to enjoin a decree in chancery obtained by Willer against Ross for the enforcement of his alleged material-man's lien, and to have the premises sold for the satisfaction of said mortgages in priority to all of said alleged liens.

The question of chief importance in the case is as to whether the several mechanics' and material-men's liens relied on by the respondents were perfected by appropriate proceedings in the probate court and became valid charges. upon the property in the hands of the several parties who now assert them.   In determining this question, the judgments obtained by the Lumber Co. and Alliger & Golightly, respectively, and the decree rendered in favor of Willer, declaring their claims to be such liens and condemning the property to their satisfaction, are not to be taken into account, since the complainant was not a party to those actions and is not bound by the

results reached in them.—15 Amer. & Eng. Encyc. of
Law, p. 165; *Young & Co. v. Stoutz & Co.*, 74 Ala. 574.

The facts necessary to be stated in respect of the claim
of the Lumber Co. are the following : T. J. Ross, the
owner of the lot, entered into a contract with Alliger &
Golightly to build a house thereon. When the house
was completed there was a balance due the builders of
about twelve hundred and fifty dollars. They owed the
Leftwich Lumber Co. $863.69 for lumber used in the
building, and for this sum they gave the Lumber Co. an
order on Ross which the latter accepted. Ross subse-
quently executed a note at 30 days to the Lumber Co. for
$500 of this amount. No part of this $863.69 was ever
paid to the Lumber Co., and. on February 10, 1890,
within the statutory period, the Lumber Co. filed a state-
ment in the office of the judge of probate claiming a ''lien
on the lot in question and upon the building situated
thereon to secure the payment of eight hundred and six-
ty-three dollars and sixty-nine cents ($863.69) ; being the
amount due and admitted to be due Alliger & Golightly,
the original contractors, for said building, on their con-
tract, after deducting all just credits according to a just
and true account thereof hereto attached and marked ex-
hibits A., B. & C., which said amount was, on the 4th
day of September, 1889, assigned by said Alliger & Go-
lightly to said Lumber Co., and they were thereby in-
vested with all the rights of said Alliger & Golightly.''
The statement further avers, that "T. J. Ross, of Florence,
Ala., is the owner of said premises,'' and is signed ''Left-
wich Lumber Co., per J. B. Leftwich, Gen. M'g'r. Left-
wich Lumber Co.''. And it is verified by said J. B. Left-
wich, who swears "that he has personal knowledge of
the matters and things stated in the foregoing statement,
and that they are .true to the best of his knowledge
and belief.'' The exhibits to this statement are :
(A.) The order of Alliger & Golightly on Ross
to pay the Lumber Co. $863.69 ''due them for all mate-
rial they furnished for your house on Ironside Street,''
&c., with direction to charge the same to the account of
"the drawers ;'' (B.); Ross's note for $500 of the amount
of the order ; and, (C.), this account : "T. J. Ross, with
Leftwich Lumber Co. Sept. 14th, 1889. To amt. as-
signed by Alliger & Golightly, $863.69.'' Several objec-

tions are made to the sufficiency of this statement to per-
fect a lien upon the house and lot in question, under sec-
tion 3022 of the Code. It is said that neither the state-
ment itself nor the facts *aliunde* show that the Lumber
Co. was the assignee of Alliger & Golightly's lien. We
can not concur in this position. It is not disputed that
there was an efficacious assignment by A. & G. of a part
of their claim against Ross for which a lien existed in
their favor, Ross himself having assented to the assign-
ment. And it is provided by our statute that "Any claim
for which a lien is provided in this chapter [creating
liens in favor of mechanics and material-men] may be
assigned ; and the assignee shall be thereby invested with
all the rights of the original holder of the lien, and be
entitled to all his remedies to enforce them."—Code,
§ 3047. If this section means anything, its meaning is
that the assignment of the claim, the debt, without more,
carries with it the assignment of the lien for its enforce-
ment. And, given the assignability of the debt, the lien,
it seems, would follow it even in the absence of express
statutory provision to that effect.—Phillips on Mechanics'
Liens, § 55 *a* ; *Westmoreland v. Foster*, 60 Ala. 448. Again,
it is insisted that the statement filed by the Lumber Co.
is insufficient to perfect the embryonic lien, in that it
does not set forth an itemized account of the claim against
Ross, for which a lien is asserted. The statute requires
the statement to contain "a just and true account of the
demand secured by the lien, after all just credits have
been given," &c. It appears from the statement and its
exhibits that the amount claimed, $863.69, was for ma-
terial furnished for the building of the house sought to
be subjected, and that Ross admitted the correctness of
the claim in all respects by accepting Alliger & Golight-
ly's order for that sum and specifying that it was due
for such material. And it is clearly shown that this
amount for material was due from Ross, originally to A.
& G. and then by assignment to the Lumber Co. There
was no necessity for an itemization of this account. A
just and true account of a demand is not necessarily a
statement of the items of the original indebtedness. The
statute does not require itemization. The demand here is
for $863.69 for material used in the erection of a certain
building, and this statement of the demand, this *account*

38

of the demand, the statement filed shows it was admitted by Ross to be just and correct, and so it is shown to have been by the evidence. The statement, in our opinion, was sufficient.—*Ainslie & Co. v. Kohn et al.*, 16 Ore. 363; *Heston v. Martin*, 11 Cal. 41; *Brennan v. Swasey*, 16 Cal. 141; *Selden v. Meeks*, 17 Cal. 129; *Lonkey v. Wells*, 16 Nev. 271; *Davis v. Hines*, 6 Ohio St. 473; *Gilman v. Gard*, 29 Ind. 291; *Bank v. Curtiss*, 18 Conn. 342; s. c. 46 Am. Dec. 325.

The verification of this statement is as follows : "State of Alabama, Lauderdale County : This day personally appeared before me, E. C. Crow, a notary public in and for the State and county aforesaid, J. B. Leftwich, Gen. M'g'r. of Leftwich Lumber Co., who being duly sworn says he is Gen. Manager of the Leftwich Lumber Co., and that he has personal knowledge of the matters and things stated in the foregoing statement, and that they are true to the best of his knowledge and belief. Feb. 10th, 1890. E C. Crow, Notary Public." This affidavit is unlike that held to be an insufficient verification of a mechanic's lien statement in *Globe Iron Roofing & Corrugating Co. v. Thacher*, 87 Ala. 458, in this : here the affidavit affirms that the affiant has *personal knowledge* of the facts contained in the statement and that they are true to the best of that personal knowledge, and that he believes them to be true ; while in that case there was no affirmation of personal knowledge at all, but only that the statement was true to the best of affiant's knowledge and belief. The difference is obvious and important. There, to place the construction most favorable to the lien on the affidavit, it could not mean more than that the affiant knew some of the facts and believed others without knowing them to be true. Here, if the affiant did not have personal knowledge of all the facts he has sworn falsely, and the perjury is none the less flagrant because of the further assertion that he *believed* these facts, which he has sworn he *knows* to be true, to be as stated. The verification is, in our opinion, sufficient : it shows on its face that the affiant had personal knowledge of the facts stated.—Code, § 3022.

The statement filed being sufficient in form and substance and being verified by a person who swears he has personal knowledge of the facts stated in it, the lien was

thereby perfected and became at once a valid charge upon
the property described for the amount claimed, if as a
matter of abstract fact its statements were true, and this
whether in point of extrinsic fact the affiant actually
knew, as he swore he did, that they were true or not. It
is the filing and verification of the statement that fixes
the lien so far as *ex parte* action can have that effect. If
the statement is sufficient in its facts, and the verification
is of the truth of such facts without more, in cases of this
sort, or of their truth to the knowledge of the affiant, the
lien exists, perfected in the sense that if the statement is
true and shown to be so on the trial for its enforcement
it is enforceable though it may be the affiant swore falsely
in respect of having personal knowledge of the correct-
ness of the statement. So far as the verification goes,
the purposes of the statute are subserved when the cor-
rectness of the statement is attested by the purging of
the conscience of the affiant in the assertion by him un-
der oath that the statement is true; this and not the ab-
stract fact of truth is the condition in this respect upon
which the lien is perfected. We do not understand that
there is anything in the case of *Globe Iron Roofing & Cor-
rugating Co.*, 87 Ala. 458, *supra*, opposed to this view;
certainly nothing in what was decided in that case. And
our conclusion is, that it was wholly immaterial to the
existence of the lien of the Leftwich Lumber Co. whether
J. B. Leftwich, who swore to it as upon personal knowl-
edge, in fact had such knowledge or not, if, as is the fact,
the statement itself was true. This disposes of the objec-
tions to the lien of the Lumber Co. as we understand
them.

The claim of lien and statement filed by Willam Willer
was against two entirely distinct lots and the houses
thereon situated in different parts of the town of Florence
in a gross sum for materials supplied by Alliger & Go-
lightly, who built both houses but under distinct con-
tracts. The whole gross sum is sought to be collected by
the enforcement of the supposed lien against the house
involved here, and the consent decree in the case of Wil-
ler v. Ross adjudged this sum to be a lien upon this house
and lot and ordered the same sold in satisfaction thereof.
It does not appear by the statement of the claim filed in
the office of the judge of probate what part of the gross

amount claimed was for materials used in the building
of this house.  Very clearly, in principle and upon all au-
thority, the statement thus filed was wholly bad and in-
efficacious to fix a lien upon either of the lots and houses
in question.—Phillips on Mechanics' Liens, §§ 376, 377,
and authorities there cited; 15 Am. & Eng. Encyc. of
Law, pp. 120, 121.  The other objections to the lien
claimed by Willer need not be considered.

Alliger & Golightly, after assigning $863.69 of their
claim against Ross to the Lumber Co. and something
like $185 to Willer, had a balance of $200 due on the
contract price for the building of this house.  For this
they filed a claim and statement for a lien.  The objec-
tions to the validity of their alleged lien proceed upon
the supposed insufficiency of the statement as in the case
of the Leftwich Lumber Co.  What we said in reference
to the statement filed by said Company will suffice to
show the grounds of our conclusion that the statement
of Alliger & Golightly was sufficient to perfect the lien
claimed by them.

The taking of Ross's notes severally by the Lumber
Co. and Alliger & Golightly for the balance due them,
respectively, payable within the period prescribed for
the filing of the statement of their claims in the office of
the probate judge was not a waiver, and did not work a
destruction, of their inchoate liens.—15 Am. & Eng.
Encyc. of Law, pp. 105—107.  And whether these notes
were surrendered to Ross on or before the actions brought
to foreclose the liens is a question in which the present
complainant has no interest.  Like the defense of usury,
attempted to be made by the respondents against the
mortgages of complainant, this was a matter of which
Ross alone had a right to complain.

An execution at law is an order to the sheriff to levy
and sell for the payment of a judgment, and for the pur-
poses of levy and sale to that end it is a lien on the
property of the defendant.  The plaintiff in judgment
and execution may control the officer in respect of his
acts under it: he has the power to direct the officer not
to levy the writ at all or for a given period of time.
When such a direction is given, the officer no longer has
authority to levy the writ: it is no longer an order to
him to proceed to make the money adjudged to the

plaintiff; it is dormant, it is lifeless; and with its destruction in this way, as well as any other, its lien upon the property of the defendant also dies, and is as if it had never existed. There is no lien because there is no execution which is the source of life to the lien. The lien which the Leftwich Lumber Co. had upon the premises involved here existed before and exists since the rendition of the personal judgment against Ross, and the order of condemnation made as a part of the entry of that judgment wholly independently both of the judgment and that order. The utter destruction of both would not prejudice this lien. It is the creation of the statute springing into existence upon the concurrence of certain facts and conditions, among which is neither the judgment against Ross personally nor the judgment condemning this property to be sold for the satisfaction of the lien. The agreement embodied in the judgment to suspend the execution for sixty days might destroy the lien of the judgment, if the judgment itself were a lien—which it is not—though the weight of authority seems to be the other way, (2 Freeman on Judgments, § 383), and the suspension of levy of an execution, issued on the judgment, by direction of the plaintiff, would destroy the lien thereof. But neither of these liens is that which stands in the way of the complainant. They would be general liens given by statutes, other than those prescribed for the lien of mechanics and material-men, to judgments and executions. These would be dormant because the order to levy and sell implied in a judgment when judgments are liens and expressed in executions has been countermanded by the plaintiff. But an order to sell is no part of a mechanic's lien: this lien exists as well before an order to sell can be made as it does after such order has been made; and the mere postponement by agreement of the execution of such order can not destroy or affect the lien of the Leftwich Lumber Co., the existence of which in nowise depends upon the existence of the order. It might as well be said that if in a decree to foreclose a mortgage there is incorporated, at the suggestion and request of the complainant, a direction that the defendant be allowed sixty days before steps toward a sale shall be taken to pay the mortgage debt, the lien of the mortgage as against junior incum-

brances is thereby destroyed, as to say that the order
suspending the judgment in this case for sixty days
operates to destroy the lien of the Lumber Co.

The lien of mechanics and material-men, "as to the
land shall have priority over all other liens, mortgages
or incumbrances created subsequently to the commence-
ment of the work on the building or improvement, or
rapairs thereto ; and as to the building or improvement,
it shall have priority over all other liens, mortgages or
incumbrances whether existing at the time of such work
or subsequently created."—Code, § 3019.   The first of
the complainant's mortgages on the lot of land here in-
volved was executed on April 29, 1889.   Whether the
work had then commenced on the building erected
thereon by Alliger & Golightly is a mooted question in
the case.   The complainant having priority under this
mortgage unless work had been commenced at the time
it was executed and the fact that work had been begun,
if it be a fact, being peculiarly within the knowledge of
the contractors, who are defendants to the bill along
with other parties claiming through them, we are of the
opinion that the burden of proving it was upon the de-
fendants : the fact from complainant's point of view was
negative in character and best known to the respondents.
This burden has not been discharged.   Golightly swears
that work had been commenced before April 29th, and
Ross swears that nothing whatever toward the erection
of the building was done on or before that day.   And the
testimony of each is given with like circumstantiality
and is equally direct and positive.   If there is aught to
turn the scales out of this equipois, it is the fact that
Golightly is interested in establishing a date prior to
April 29th as the beginning of the work, and Ross's in-
terest is equally balanced, so that he would neither gain
nor lose by either determination of this issue of fact ;
and this fact goes to the favor of the complainant. Upon
these considerations we are of opinion that the mort-
gage of April 29, 1889, is entitled to priority of satis-
faction out of the lot itself to the liens of the Leftwich
Lumber Company and Alliger & Golightly.

It results from the foregoing views and conclusions
that the decree of the chancery court must be reversed.

[Pate *et al.* v. Hinson.]

The cause will be remanded for final decree and proceedings thereunder in that court.

Reversed and remanded.

