(129 So. 235)

**STANDARD SANITARY MFG. CO. et al.
v. AIRD.**

.6 Div. 343.

Supreme Court of Alabama.
May 29, 1930.

Rehearing Denied June 28, 1930.

Coleman, Coleman, Spain & Stewart, of Birmingham, for appellants.

J. B. Aird, of Birmingham, for appellee.

SAYRE, J.

While appellee held a second mortgage on a certain lot or parcel of land, the owner, Tillman, contracted with Aldridge for the erection of an apartment house thereon. Pending the completion of the building, appellee filed his bill to foreclose his mortgage, making sundry subcontractors and materialmen, among others, parties defendant. These appellants, subcontractors and materialmen, came in, claiming liens on the property. The final decree denied the liens so claimed, and the subcontractors and materialmen have appealed.

The consolidation of claims and causes brought about by the procedure followed in this cause was proper. Ex parte Brown, 58 Ala. 541; Hagan v. Riddle Co., 209 Ala. 606, 96 So. 863.

Appellants, proceeding according to the provisions of section 8840 of the Code, sought to have liens on the property declared in their favor for the unpaid balance in the hands of the owner at the time of the notices served on him. Appellee purchased the property pending these proceedings and has undertaken to defend against the liens claimed.

Appellants gave notice as the statute prescribes, and there was then in the hands of the owner a considerable sum; but the contractor had given orders on the owner for payments to the architect whom he had employed and to a lumber company which had furnished materials and credit for use in and about the buildings, which had been accepted by the owner, payable in the future, and these orders, if allowed, will absorb the balance which the court decreed to them rather than to appellants. These parties, thus favored, had not invoked the aid of the statute; had not given the notice prescribed by section 8840 of the Code.

The decree (July 25, 1929) appears to have followed the law as stated in Dixie Lumber Co. v. Young, 203 Ala. 115, 82 So. 129 (May 1, 1919), in which it was held that where a materialman furnished materials to a contractor without notifying the owner at the time that they were furnished in compliance with Code 1923, § 8832 (Code 1907, § 4754), no lien was acquired for any unpaid balance due by them to the contractor until notice was given. But the law as stated in the last-named case was materially changed in Le Grand v. Hubbard, 216 Ala. 164, 112 So. 826, 828 (May 5, 1927), where it was held that section 8840 of the Code of 1923 operated to give to subcontractors and materialmen potential liens, which, on notice to the owner, date back to the commencement of the work, as against liens claimed by outsiders or subcontractors and materialmen who have not invoked the aid of the statute, and thereupon become fixed, subject only to pro rata distribution of the amount in the hands of the owners among those entitled to such liens. Code, § 8854.

The record does not indicate that the contractor's orders upon the owner have been paid. Appellee's suggestion is that the payment or nonpayment of these orders is not material to the issue in this case. However that may be, we prefer to consider the case made by the record.

Appellee quotes from the opinion in Le Grand v. Hubbard as follows: "We are not now dealing with the rights of one who has, by act of the owner and contractor, become entitled to the money theretofore due the contractor." We continue the quotation as follows: "We would merely note that under section 8861 the assignee is 'invested with all the rights of the original holder of the lien.' This implies the assignee has no higher standing than the original lienholder, and takes his place in the line at the pay window."

We quote section 8861: "Any claim for which a lien is provided in this article [the article providing liens for mechanics and materialmen.—§§ 8832–8862] may be assigned; and the assignee shall be thereby invested with all the rights of the original holder of the lien, and be entitled to all his remedies to enforce them."

And we now add: There is no denial of appellee's right to retain the share which would have been due to his equitable assignors, that is, the parties to whom he promised payments upon a pro rata distribution of the sum due upon the contract at the date of the notice or thereafter (McDonald Stone Co. v. Stern, 142 Ala. 506, 38 So. 643), as provided by section 8854. The statement now is that appellee's assignors, by taking assignments of the contractor's orders upon the owner, secured to themselves or their assignee no higher or better right than other subcontractors or materialmen whose claims, then, or now after compliance with the statute, remain unsatisfied. As the court observed in Alabama & Georgia Lumber Co. v. Tisdale, 139 Ala. 250, 36 So. 618, 620, in view of a closely related though not identical status of conflicting claims, "Such construction [as appellee here contends for] would put it in the power of the owner and contractor to practically destroy the lien of the employee and materialmen." That construction was reprobated by the court in that case. In the circumstances of this case, appellee's construction of the statute would permit the owner and contractor to provide for the payment of some subcontractors and materialmen to the exclusion of others, and that has been the effect according to the decree now under review. But in Le Grand v. Hubbard, supra, there was a writ of garnishment against the owner. The lien of the garnishment attached prior to the giving of notice to the owner required of persons furnishing materials or labor to the contractor. The materialmen were decreed priority in payment. The decree was affirmed. In the course of its opinion the court said: "This section [8854] clearly negatives any idea that liens date from the giving of notice to the owner as between the lienholders. It will be readily seen this section cannot have effect if garnishment liens may intervene between the claimants under this section. Laborers, for example, cannot give notice until work is done and wages accrued." The principle of that case applies here. Appellee, who stands in the shoes of the owner, claims priority over subcontractors and materialmen, who have given the statutory notice, for the claims of other subcontractors and materialmen, who have not given the notice, but, in lieu thereof, rely upon the fact that the contractor has given them orders on the owner, who has accepted such orders to be paid, for aught appearing in this record, in the future. If owners and contractors shall be allowed thus to bring about inequalities between subcontractors and materialmen having claims of equal merit, then, to quote McDonald Stone Co. v. Stern, 142 Ala. 511, 38 So. 643, 645, "If payment may be anticipated and liens destroyed in this way, the statutes [section 8854, providing for pro rata distribution among lienholders, and related sections] may as well be abolished."

In view of the opinion filed by FOSTER, J., the following further statement is considered to be necessary:

In Lavergne v. Evans Bros. Construction Co., 166 Ala. 289, 52 So. 318, 319, the following construction of the presently relevant parts of the statute was accepted by the court as correctly stating the legislative purpose: "Under the statute the lien of mechanic and materialman attaches from the commencement of the building or improvement, subject, however, to be defeated and lost if the claim be not verified and filed with the judge of probate within the time prescribed," citing Welch v. Porter, 63 Ala. 231, where Stone, J., discussing the statute, said, among other relevant things: "Commencement of the building is a patent fact, which all persons can see and know; and persons dealing in reference to such property are put on inquiry, and justly chargeable with knowledge of all that inquiry would lead to namely, that there is, or may be, a mechanic's lien under the statute. Such is the argument in vindication of this whole field of legislation, and its moral equities. The legislature aimed at protection to a meritorious class of citizens, and did not intend to provide a snare that might entrap bona fide purchasers."

The application of the stated rule of procedure as against a mortgagee was fully recognized in Leftwich Lumber Co. v. Florence Mutual Building Ass'n, 104 Ala. 584–598, 18 So. 48, in which the opinion was written by the elder McClellan.

A clear statement of the law under the Alabama statute is to be seen in Eggleston v. Birmingham Purchasing Co. (C. C. A.) 15 F. (2d) 529.

And heretofore in the discussion of this case the authority of Le Grand v. Hubbard, supra, without more, has been considered to be sufficient authority of the conclusions stated.

We have heretofore quoted from the opinion in that case.

Prior to Dixie Lumber Co. v. Young [203 Ala. 115, 82 So. 129, 131], supra, the law was that the lien of subcontractors and materialmen dated from the commencement of the work, provided, of course, they followed the routine of the statute, taking precedence over the claims of mortgagees and attaching or garnishing creditors subsequent to that time. But in the last-mentioned case it was said: "There can therefore be no insistence that appellant [a materialman] acquired any lien for any unpaid balance due by the owner to the contractor until the giving of the notice."

We have not been able to understand Le Grand v. Hubbard unless it overrules Dixie Lumber Co. v. Young in the respect now in question, and the parties, both represented by able counsel, appear to have taken the aforestated view of these two cases, for the main reliance of appellant is upon Le Grand v. Hubbard, while, on the other hand, appellee cites Dixie Lumber Co. v. Young to four out of five of his "Propositions of Law."

Referring to the facts more in detail:

The work on the building was commenced in May, 1926.

The order under which Breeding, the architect, claimed, and was allowed, precedence over subcontractors and materialmen, whose labor and materials went into the building along with the labor of Breeding, was drawn by the contractor June 16, 1926, and accepted by the owner, Tillman, June 20, 1926. The order to the Barnett Lumber Company was dated and accepted July 22, 1926. It is undisputed that, after the completion of the building, there remained in the hands of the owner eight to ten thousand dollars (we do not state the exact amount, leaving that to be done in the trial court) due on the contract price. This balance the decree under review allowed the claims of Breeding and the Barnett Lumber Company to absorb to the exclusion of appellants, subcontractors, and materialmen whose labor and materials went into the building.

In view of the facts and the concurring decisions of this court—the decision in Dixie Lumber Co. v. Young alone excepted—it has been considered that the learning on the subject of the novation of contracts was immaterial; this for the reason that by novation, no more than by payment hereafter to be made to the holders of such orders, could the precedent lien of subcontractors and materialmen be deferred and destroyed. Otherwise, as we have before said, the statute is futile in its purpose to protect subcontractors and materialmen.

The record hardly shows such a case, but if the owner had purchased material and furnished labor, on his individual credit, which went into the building in lieu of labor and material which, under his contract, the original contractor was to furnish, it may be conceded that the price thereof would be charged to the original contractor, thereby reducing the balance available to subcontractors and materialmen who extended credit to such original contractor. But if the purpose was simply to allow Breeding and the Barnett Lumber Company a preference over other subcontractors and materialmen—as appears to have been the case—that purpose ought not to be subserved by the decree. And, whatever the purpose—which, of course, can only be inferred from what the parties did—the effect of what was done was to interpose between appellants and the fund in the hands of appellee, owner, so as to destroy the statutory lien on that fund. Of what account a lien that may be defeated in this manner? And why should the rights of an assignee be superior to the rights of his assignor unless indeed the former be an assignee for value without notice of outstanding equities? It can hardly be denied that appellee and the parties to whom he agreed to pay the balance of the fund in his hands knew that others, appellants for example, would furnish labor and materials to the building on the contractor's credit and thereby, in virtue of the statute, become entitled to liens. The effect of the statute is to charge them with notice. In Haynes v. Coles County, 234 Ill. 137, 84 N. E. 747, 750, the court said: "If, however, a contractor could defeat the lien of a subcontractor by merely transferring the fund due or to become due, by giving an order, the statute creating a lien in favor of a person furnishing labor or material to a contractor for a public improvement [in that case] would become a nullity, as the fund might be transferred immediately upon making the contract to erect the building." And in St. Paul's M. E. Church v. Gorman, 20 Ohio Cir. Ct. R. 275, as quoted in 19 Ann. Cas. 438, the court said: "If the mere assignment by a head contractor could cut off the rights of a subcontractor, then it would be easy to defeat the object of the statute, which is to protect the subcontractor and materialmen," and more to the same effect. So likewise Bourget v. Donaldson, 83 Mich. 478, 47 N. W. 326; Roe v. Scanlan, 98 Ky. 24, 32 S. W. 216; Carter v. Brady, 51 Fla. 404, 41 So. 539, all cases very closely in point, and such is the necessary effect of our cases antedating Dixie Lumber Co. v. Young, and, as the writer thinks, of Le Grand v. Hubbard.

In different states various statutory systems are set up for the protection of subcontractors and materialmen. In Dixie Lumber Co. v. Young, to which we have referred, the court followed Spengler v. Stiles-Tull Co., 94 Miss. 780, 48 So. 966, 19 Ann. Cas. 426, where the Mississippi statute was expounded. But this court in the later case of Le Grand v. Hubbard, to which also we have referred, said: "This," referring to the Mississippi rule

that, among laborers and materialmen of the contractor, the one who first gives the stop notice is preferred, approved in Dixie Lumber Co. v. Young, "is directly opposed to section 8854 of our Code above quoted," where, we now repeat, the provision is for a pro rata distribution among the holders of liens, that is, those subcontractors and materialmen who invoke the statute, complying with its requirements, as did appellants.

We need not prolong the discussion. We adhere to the interpretation placed upon the statute in Le Grand v. Hubbard, supra. The statements of the law of the subject to be found in 40 Corpus Juris, p. 306 et seq., so far at least as concerns adjudications by this court, are based upon the decision in Dixie Lumber Co. v. Young, to which we have referred. What has been said will suffice to dispose of all questions heretofore raised in this cause upon its return to the trial court.

Appellees Breeding and Barnett Lumber Company had furnished money and materials to the contractor. It may be that the owner had made himself personally liable to them; but other subcontractors and materialmen should not be affected by that fact. In my opinion they were in no better position than other subcontractors and materialmen who had not sought a lien under the terms of the statute would have been. But they were in fact awarded a lien by the decree under review which gave them a preference over other subcontractors and materialmen who had complied with the statute, payable out of the balance in the hands of the owner, thereby exhausting the fund and leaving appellants without remedy. My judgment is that the decree should be reversed, and the cause remanded for further consideration.

All the Justices concur in the result.

**FOSTER, J.** (concurring in result).

■■ It is clear that if the owner had paid the original contractor for the structure before steps were taken to fasten a lien upon any unpaid balance due by him, he would be protected as against the attempted creation of liens by materialmen thereafter made. But so long as there remains any portion of this amount unpaid, such a lien may be created upon it by complying with the statute. Section 8840, Code. When so created, it takes precedence over liens of a different nature which accrued on the fund subsequent to the beginning of the structure. The foregoing principles are stated in the case of Le Grand v. Hubbard, 216 Ala. 164, 112 So. 826.

■ The important question, therefore, is whether there is a payment effected when the original contractor gives an order on the owner for amounts due by him for material and labor, or for any other purpose as to that matter, and the owner unconditionally accepts such order. Whether there is a payment in that connection seems to depend upon whether thereby a novation was effected. The general rule is that such transaction does not constitute a payment or discharge of the original debt in the absence of an agreement to that end. 48 Corpus Juris 621.

■ But when there is such an agreement it effects a novation, and the original debt is to that extent fully paid, though the new promise may never be. To constitute a novation which accomplishes this result, there must be an agreement that it shall extinguish the old contract or obligation to that extent. Hopkins v. Jordan, 201 Ala. 184, 77 So. 710; Tuscaloosa Lumber Co. v. Tropical Paint & Oil Co., 211 Ala. 258, 100 So. 236, citing many cases; 46 Corpus Juris, 616.

■ The mere acceptance of an order or the making of a promise to pay the new creditor does not, without more, effect that result, because the presumption of law is that it is taken conditionally as a payment only when it is actually paid. Tuscaloosa Lumber Co. v. Tropical Paint & Oil Co., supra.

But it is said that this would work an injustice to the owner who has bound himself by accepting an order from his contractor and thereby bound himself to pay the debt to that extent, and this he must do, though he may later be required to equalize and adjust that amount with materialmen or others who give the notice later, and thereby fix their liens, and of this right the owner may be ignorant when he accepts the order.

The answer to that is twofold: First, he knows, presumptively, that to effect a payment to that extent, there must be an agreement that his acceptance shall be so treated. Therefore he need not accept the order payable in the future without an agreement that it shall be treated as a payment of that amount to his contractor. A second reason is that if he is served with notice of a lien by such a materialman or another, before he pays the order, that fact furnishes a pro tanto defense against the payment of his acceptance unless it be a negotiable instrument in the hands of a holder in due course other than the payee. For it is only treated as collateral, unless acceptance as a payment is agreed upon, and the acceptor would only be liable to this payee to the extent that such liability is affected by other liens of equal or superior priority. If he executes a negotiable instrument, he knows at the time that it may extend his liability in the hands of a holder in due course, and he thereby assumes the risk. Likewise, if he pays the amount of his acceptance, when there has been no agreement that its execution extinguishes his debt to that extent, and the payment is made after notice served on him by other lienors, who thereby fix a lien on the fund in his hands as of the date of the beginning of the structure, he likewise does so at his own risk.

■ In this case the order in favor of Breeding by the contractor recites that receipt of the amount specified is thereby acknowledged as a payment on the debt due the contractor by the owner. Its recitals show a novated contract and the amount was credited on the account. It was therefore a payment of that amount and to that extent there was no balance.

■ The order in favor of Barnett Lumber Company was given before the materials were furnished, and were then furnished upon the strength of the agreement by the owner to pay the amount to this materialman. This was doubtless intended to, and did, accomplish the same result as if the materialman had given notice before furnishing the material, and the owner had failed to notify the materialman that he would not be responsible for the price, all as provided in section 8832, Code. The result of the arrangement was to constitute Barnett Lumber Company an original contractor. The notice therefore required by section 8840 to be given by all persons other than original contractors was not required by Barnett Lumber Company, to the extent of the specified amount. Wahouma Drug Co. v. Kirkpatrick, 187 Ala. 318, 65 So. 825; Trammell v. Hudmon, 78 Ala. 222; Redd v. Todd, 209 Ala. 56, 95 So. 276.

■ It is settled that the owner can use any amount unpaid by him to his original contractor in furnishing labor and material to complete the job in event such original contractor shall fail to do so. In such event the lien of other laborers and materialmen who had furnished their labor and supplies to the contractor are subordinated to this right of the owner to complete the job by the use of such balance. Cranford Merc. Co. v. Wells, 195 Ala. 251, 70 So. 666; Butler v. Hawk, ante, p. 347, 128 So. 451.

■ To deny the owner the right to pay or obligate himself to pay for material necessary to be used in completing the job, when this was necessary to carry on the work, would deprive the owner of the fruits of his contract with one who may not be financially able to complete it. The effect of this arrangement therefore was to withdraw the amount specified in the agreement from the status of unpaid balance due the contractor by the owner, upon which materialmen and laborers could fasten a lien by the notice provided in section 8840, Code.

The accepted order recites that the owner shall pay Barnett Lumber Company monthly 60 per cent. of each monthly bill for material delivered in the previous month, to an amount of approximately $5,000, more or less. The entire sum of the monthly bills aggregated $6,596.22. There seems to be no controversy as to the amount furnished under this arrangement. Too, it was all furnished before appellants gave their notice under section 8840.

It appears therefore that an amount equal to 60 per cent. of the bils for material, aggregating, to wit, $6,596.22, which is, to wit, $3,957.73, should not be treated as an unpaid balance, and is not subject to the liens which come into being by giving the notice under section 8840, Code, by persons other than original contractors.

And as under the terms of the agreement the full amount of $6,596.22 was not agreed to be paid by the owner, but only 60 per cent. of it, the full amount, we think, should not have been decreed as withdrawn from such unpaid balance, but only the sum of $3,957.73.

This result, as we understand the facts, allows an amount for distribution to the persons giving notice under section 8840, and the cause should be reversed and remanded for further proceedings.

We therefore concur in the reversal and remandment of the cause.

ANDERSON, C. J., GARDNER, THOMAS, BOULDIN, and BROWN, JJ., concur in the foregoing.

## On Rehearing.

FOSTER, J.

On the submission of this case the parties invited our decision respecting the transactions of Breeding and Barnett Lumber Company. When we determined them in accord with the conclusion of that court, except that only 60 per cent. of the account of the Barnett Lumber Company was thereby treated as a payment, we reversed the decree for the court and parties to further try the case. If upon another trial there appear other items of payment to the contractor sufficient to discharge the entire debt to him, it will doubtless be so decreed. But such items were not included in the contentions on this appeal, and do not seem to be included in exceptions by appellee to the register's report.

■ In response to the contention of appellant on rehearing, we will say that we do not agree that the acceptance by Tillman was conditional. In fact, it was unconditional, and when so accepted its terms clearly indicated that thereby the owner was to be credited with its amount. The fact that Breeding and the owner made a separate agreement as to when it would be paid to Breeding was a transaction between them alone, and did not affect the agreement between the contractor and owner as recited in the instrument, bearing an unconditional acceptance of the owner.

The other matters are sufficiently treated in the majority opinion.

The application for rehearing is overruled.

ANDERSON, C. J., and GARDNER, THOMAS, BOULDIN, and BROWN, JJ., concur.

SAYRE, J., adheres to the views expressed in his opinion.