(112 So. 826)

**LE GRAND v. HUBBARD et al.   (3 Div. 723.)**

Supreme Court of Alabama.   May 5, 1927.

**1. Mechanics' liens** ⊄=198—**Liens of laborers or materialmen on improvement have same priority as against liens of third persons (Code 1923, §§ 8832, 8833).**

Under Code 1923, §§ 8832, 8833, liens of all persons doing work or furnishing materials for building or improvement on land are given same priority as against liens of third parties.

**2. Mechanics' liens** ⊄=198—**Notice that statutory liens will accrue against building in favor of laborers and materialmen is chargeable to third persons from commencement of work on building (Code 1923, §§ 8832, 8833).**

Under Code 1923, §§ 8832, 8833, providing for liens to laborers and materialmen on building or fund due contractor, commencement of work on building is fixed as event and time when third persons are charged with notice that, on compliance with terms of statute, liens will accrue against building in favor of laborers and materialmen.

**3. Mechanics' liens** ⊄=164(1)—**Statute limiting certain liens of laborers and materialmen to unpaid balance due contractor and requiring written notice to owner of lien held for protection of owner (Code 1923, §§ 8832, 8840).**

Code 1923, § 8832, limiting liens of laborers and materialmen employed by contractor to unpaid balance due contractor, and section 8840, requiring notice in writing to owner setting forth nature of lien, are for protection of owner.

**4. Mechanics' liens** ⊄=118—**Until notice is given, lien of laborers and materialmen remains inchoate (Code 1923, § 8840).**

Under Code 1923, § 8840, lien of laborers and materialmen against building remains inchoate or potential until required notice is filed.

**5. Mechanics' liens** ⊄=206—**Assignee of mechanics' lien takes no greater rights than original lienholder (Code 1923, § 8861).**

Under Code 1923, § 8861, vesting in assignee all rights of original holder of mechanics' and materialmen's lien, assignee has no greater rights than original lienholder.

**6. Mechanics' liens** ⊄=195—**Liens of laborers and materialmen do not have priority in order of filing, but stand on equal footing (Code 1923, § 8854).**

Under Code 1923, § 8854, providing that all liens of laborers and materialmen shall stand on equal footing and funds for improvement prorated if insufficient, liens of laborers and materialmen do not have priority in order of filing.

**7. Mechanics' liens** ⊄=198—**Potential lien of laborers or materialmen, dating back to commencement of work as against outside liens, on notice to owner, is not rendered nugatory by owner's right to pay contractor until notice (Code 1923, §§ 8832, 8833, 8854).**

Under Code 1923, §§ 8832, 8833, 8854, right of owner to carry out contract and pay contractor until statutory notice is given of lien by laborers and materialmen, does not render nugatory provisions giving potential liens, which, on notice to owner, date back to commencement of work, as against outside liens.

**8. Mechanics' liens** ⊄=201—**Laborers' and materialmen's lien on fund due contractor, filed subsequent to lien of garnisheeing creditor, held to have priority over garnishment lien (Code 1923, §§ 8832, 8833, 8854).**

Lien of laborers and materialmen furnishing materials for construction of dwelling against fund due contractor by owner, held to have priority under Code 1923, §§ 8832, 8833, 8854, over lien of creditor garnisheeing fund due contractor on claim unconnected with construction of dwelling, though laborers' and materialmen's liens were filed subsequent to garnishment lien.

Appeal from Circuit Court, Montgomery County; Walter B. Jones, Judge.

Bill in equity by M. P. Le Grand against T. B. Hubbard and others. From a decree denying him relief, complainant appeals. Affirmed.

The bill shows that:

July 3, 1924, Le Grand sued Thomas Purvis, at law, and had garnishment issued to Hubbard as garnishee on that date. October 8, 1924, Le Grand recovered judgment against Purvis, and January 7, 1925, Hubbard filed his return to the writ of garnishment, stating that the garnishee had theretofore entered into a contract with Purvis, by the terms of which Purvis agreed to furnish all labor and material and to erect for the garnishee a dwelling house, according to specifications, at and for a price stated; that, after all credits, there was due from the garnishee to Purvis a sum stated, which the garnishee paid into court; that the garnishee had been notified that certain named persons claimed title to or interest in the debt due by the garnishee to Purvis; that garnishments or notice of liens in the cases of the several named claimants had been served upon the garnishee on the dates named, the first of which, after that of Le Grand, being on July 19, 1924; and that the garnishee prayed notice to the several claimants requiring them to come into court and propound their claims to the fund so paid into court.

Such notice was issued as prayed and served upon the named claimants, in response to which Jenkins Brick Company, James M. Gorrie, J. R. Persons, Highland Park Lumber Company, Dixie Electric Company, and Central Cement & Supply Company filed their claims. Thereafter the actions of all said claimants against Purvis as defendant and Hubbard as garnishee were transferred to the equity side of the court.

The bill makes the garnishee, Hubbard,

---

⊄=For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

and the above-named claimants parties defendant, and prays the settlement of the priorities of complainant and the several other claimants to the money owing by Hubbard to Purvis.

By an agreed statement of facts it appears that the amounts claimed by the several claimants—except Gorrie—were due them as subcontractors, from Purvis, as original contractor, for materials furnished in the erection of the house of Hubbard, the owner, that the suit instituted by complainant, Le Grand, against Purvis was for a cause of action in no way pertaining to the construction of the Hubbard building, and that the question involved in the case is, "Who is entitled to the fund due by Hubbard to Purvis? Is it Le Grand, or is it the said subcontractors?"

By its decree the trial court declared the debts or demands of the subcontractors to have precedence and priority over the debt or demand of the complainant so far as the sum due by Hubbard to Purvis was concerned, and excluded complainant from participation in said fund.

Rushton, Crenshaw & Rushton, of Montgomery, for appellant.

A materialman or subcontractor has a lien only to the extent of the unpaid balance due by the owner to the principal contractor at the time notice is served upon the owner. Greene v. Robinson, 110 Ala. 503, 20 So. 65; Ala. Ga. Lbr. Co. v. Tisdale, 139 Ala. 250, 36 So. 618; McDonald Stone Co. v. Stern, 142 Ala. 506, 38 So. 643. Under the Alabama statute the lien of a garnishment is superior to that of a subcontractor, where notice was not given to the owner prior to service of the writ of garnishment. 40 C. J. 286; 18 R. C. L. 874; Conboy v. Fricke, 50 Ala. 414; Dixie Lbr. Co. v. Young, 203 Ala. 115, 82 So. 129; Spengler v. Stiles Lbr. Co., 94 Miss. 780, 48 So. 966, 19 Ann. Cas. 427; Mueller v. Kroll, 207 Ill. App. 306; Strickland Lbr. Co. v. Rheinhart, 115 Miss. 749, 76 So. 643; Ann. Cas. 1913D, 514; Riverside Cont. Co. v. New York, 218 N. Y. 596, 113 N. E. 564, Ann. Cas. 1918C, 1075; Cahoon v. Levy, 6 Cal. 295, 65 Am. Dec. 515; Stevens v. Ogden, 130 N. Y. 182, 29 N. E. 229; McCorkle v. Herrman, 117 N. Y. 297, 22 N. E. 948; Rockel on Mechanics' Liens, § 154.

Hill, Hill, Whiting, Thomas & Rives, of Montgomery, for appellees.

The lien of the subcontractors dated from the time the materials were furnished. The materials were furnished prior to the issuance of the garnishment, and the liens therefor are paramount to the lien created by the garnishment. Code 1923, §§ 8832, 8833; Young v. Stoutz, 74 Ala. 574; Welch v. Port-er, 63 Ala. 225; Jackson v. Farley, 212 Ala. 594, 103 So. 882.

BOULDIN, J. The only question involved in this appeal is the priority of liens as between a garnishing creditor of a contractor and materialmen furnishing materials to the contractor for the erection of a building. An admitted unpaid balance due from the owner to the contractor was paid into court. This fund is the subject-matter of the suit.

The decree was upon an agreed statement of facts. The materialmen took all required steps to perfect their liens under the mechanic's lien law. The lien of the garnishment attached prior to the giving of notice to the owner required of persons furnishing material or labor to the contractor. The materialmen were decreed priority in payment. Appellant contends, in effect, that the materialman's lien dates from the giving of such notice as against other liens or incumbrances.

Every person who shall do any work or furnish any material for any building or improvement on land, under or by virtue of any contract with the owner or his contractor, shall have a lien therefor on the building and on the land to the extent of the owner's interest therein—

"or, if employés of the contractor or persons furnishing material to him, the lien shall extend only to the amount of any unpaid balance due the contractor by the owner or proprietor, and such employés and materialmen shall also have a lien on such unpaid balance." Code, § 8832.

"Such lien, as to the land, shall have priority over all other liens, mortgages, or incumbrances created subsequently to the commencement of the work on the building or improvement; and, as to the building or improvement, it shall have priority over all other liens, mortgages, or incumbrances, whether existing at the time of the commencement of such work, or subsequently created." Code, § 8833.

Thus section 8832 declares, in one and the same section, the lien, the extent of it, and the classes of persons entitled thereto. Section 8833 immediately follows, fixing priority as against other liens. "Such lien" refers back to the "lien" used in the singular throughout section 8832, and declared in favor of "every person" named in that section.

[1] The natural and obvious intent of these sections is to give the lien of all persons the same priority as against liens of third persons.

We find nothing in the statutes, nor in the general policy expressed therein, denoting a purpose to discriminate against materialmen and laborers for the contractor in this regard.

[2] Commencement of work on the building, a matter open to the observation of all,

is fixed as the event and the time when third persons are charged with notice that, on compliance with the terms of the statute, liens will accrue against the building in favor of those whose labor and material bring it into being.

[3, 4] The provision of section 8832, limiting liens of this class to the unpaid balance due or to become due the contractor, and of section 8840, requiring notice in writing to the owner, "setting forth the amount thereof, for what, and from whom it is owing," are for the protection of the owner. After such notice any unpaid balance "shall be held subject to such lien," the lien declared in former sections. Until notice given, the lien remains inchoate or potential as a lien on specific property, as all liens declared remain inchoate until the required statement is filed in the office of the Judge of Probate.

"Unless such statement is so filed the lien shall be lost." Code, § 8836.

"All liens arising under this article, except in favor of the original contractor, shall stand on an equal footing, and be first paid out of the proceeds of the sale of the property, or money collected from the owner or proprietor; and if such proceeds and money are insufficient to satisfy such liens in full, the same shall be distributed pro rata among the holders thereof." Section 8854, Code 1923.

This section clearly negatives any idea that liens date from the giving of notice to the owner as between the lienholders. It will be readily seen this section cannot have effect if garnishment liens may intervene between the claimants under this section. Laborers, for example, cannot give notice until work is done and wages accrued.

The case of Leftwich Lumber Co. v. Florence Mutual Building & Loan Ass'n, 104 Ala. 584, 598, 18 So. 48, dealt with the priority of mortgage liens and the lien for materials furnished the contractor. The claimant took by assignment from the materialman. The priority was determined by the provisions of section 3019, Code of 1886, the same as section 8833, above quoted. That case is a direct authority here.

Appellant relies upon the authority of Dixie Lumber Co. v. Young, 203 Ala. 115, 82 So. 129. That case involved priority between a materialman of the contractor and an equitable assignee of the fund. The special equities in the case were that a bank furnished the contractor the money with which to construct the building, taking an order on the owner, which was recognized and paid by the owner as funds accrued to the contractor. The bank was treated as an equitable assignee of the fund, and as to an unpaid balance, was given preference over the materialman who had not given notice at the time the order became effective.

[5] We are not now dealing with the rights of one who has, by act of the owner and contractor, become entitled to the money theretofore due the contractor. We would merely note that under section 8861 the assignee is "invested with all the rights of the original holder of the lien." This implies the assignee has no higher standing than the original lienholder, and takes his place in the line at the pay window.

It must be conceded that the Dixie Lumber Company Case supports appellee's contention in much of its argument going to the effect that our statute adopts the New York system and approves the decision of the Supreme Court of Mississippi in Spengler v. Stiles Lumber Co., 94 Miss. 780, 48 So. 966, 19 Ann. Cas. 426, as applicable to our statute.

On examination we find the Mississippi statute declaring the lien provides it shall not take effect as to purchasers or incumbrances for a valuable consideration without notice until suit is commenced to enforce it or the contract under which the lien is claimed is filed for record. Code of Miss. 1906, § 3058. Such lien exists only in favor of persons who contract with the owner, his agent, etc. Section 3059. As to employés and materialmen of the contractor, the statute merely provides a stop notice, whereupon the balance due the contractor becomes bound, and, suit being brought to which contractor and owner are parties, the "judgment shall be a lien from the date of such notice." Section 3074.

Very consistently the Mississippi court, applying the New York rule, held the lien came into being only on giving the notice and did not relate back to the commencement of work on the building. Their statute contains no provision similar to section 8833 of our Code.

[6] Following up the idea of first in time, first in right, the Mississippi court holds that, among laborers and materialmen of the contractor, the one who first gives the stop notice is preferred. Citizens' Lumber Co. v. Netterville, 137 Miss. 310, 102 So. 178. This is directly opposed to section 8854 of our Code above quoted.

Our mechanic's lien statutes, in the main, date from the Act of March 6, 1876. Code of 1876, § 3440 et seq.

Mr. Justice Stone, writing for the court, soon after their enactment, said:

"Their general policy was and is to secure to the artisan and laborer the just reward of his labor, and the lien conferred is somewhat analogous in its aims to the equitable lien of a vendor for unpaid purchase money of lands sold. It is inequitable, says the law, that one shall enjoy another's lands, and not pay the promised price. So the policy of the statute we are considering declares that it is inequitable that one shall enjoy another's goods, or the products of his labor and skill, without making just compensation therefor. The same reason which upholds the policy of the one, vindicates the justice of the other. * * *

"These liens being of statutory origin, it very naturally followed that, while a general policy pervades them all, great diversities of detail are found in the various legislative systems. The diversities exist alike in the scope of the lien, the conditions of its creation, and the manner of its preservation and enforcement. Hence, what will or will not uphold such lien under one system of statutes, is often a very poor guide in controversies arising under other legislation. Judicial precedent is serviceable in furnishing canons of interpretation, and analogies to aid and direct judicial inquiry; but, when the statutes are essentially different, their assistance extends no further. The inquiry, at last, in all such cases is, what is the legislative will and intent, as expressed in the statute. All the authorities agree that the lien cannot be extended beyond the provisions of the statute conferring it, and that there is no limit or restraint on legislative power to create such lien. It is but a mode of securing the payment of a debt. Phil. on Mech. Liens, §§ 98, 99, 100." Ex parte Schmidt, 62 Ala. 252, 255, 256.

The case of Conboy v. Fricke, 50 Ala. 414, holding the garnishment lien superior, was dealing with a local act for the city and county of Mobile, which had little in common with our present statutes.

A later statute (Acts 1890-91, p. 578), purporting to give persons furnishing labor and materials to the contractor liens for the full amount of their claims without notice to the owner, was held unconstitutional. Randolph v. Builders' & Painters' Supply Co., 106 Ala. 501, 17 So. 721; Selma Sash, Door & Blind Factory v. Stoddard, 116 Ala. 251, 22 So. 555.

Our statute carries some features of both the New York and Pennsylvania systems, as elaborately discussed in the Mississippi case, and aims to avoid the hardships of both.

[7] That the owner is free to carry out his contract with his contractor and make payments to him, or on his order pursuant thereto, until the statutory notice is given, does not strike out or render nugatory the other provisions giving a potential lien, which, upon notice to the owner, dates back to the commencement of work as against outside liens and incumbrances.

[8] The statute aims at a workable system. Presumably the contractor will live up to his obligations, recognize the rights of his employés and materialmen, and the entire project proceed to completion to the satisfaction of all parties without expense or the hindering of operations by legal proceedings to claim and enforce liens. But the statute charges the improvement and the unpaid balance accruing to the contractor with the demands of those whose labor and material have entered into its creation, to be asserted and enforced where occasion arises, and in the manner defined by the statutes.

Affirmed.

All the Justices concur.