MADDOX, Justice
(dissenting).
The case was tried on a stipulation: Between April and December, 1978, Rawls sold and delivered, at Brantley’s request, certain building materials which were used in remodeling Jackson’s home. When Brant-ley did not pay Rawls for these materials, Rawls’ manager visited the Jacksons, on December 1, 1978, explained the use of the materials and the fact of nonpayment, and advised the Jacksons that Rawls was filing a lien of $13,579.61 against what the Jack-sons owed Brantley. At that time no written notice of the lien was given to the Jacksons.
The vice-president of Rawls prepared the lien and mailed a copy of it to Jackson on the same day it was recorded in the courthouse. She felt that she had recorded it before she mailed the copy. The lien itself shows it was filed at 4:40 p. m. It may have been left at the probate office earlier in the day, but it was “filed” as required by statute at 4:40 p. m.
Jackson testified that he received a copy of the lien on December 1, 1978, “around 4:00 p. m.,” and thereafter paid the electrician and a cabinet maker who had demanded their money for work done on the house even though Rawls’ manager had personally told him that Rawls would file a lien, and even though he had received the written notice of the filing.
Following the reception of evidence, the trial court denied the lien because:
The evidence is not clear and convincing that notice to Jackson in writing of Rawls’ intent to claim a lien was made to Jackson prior to the filing of the lien in the Office of the Judge of Probate at 4:40 P.M. on December 1, 1978.
That finding is clearly and palpably wrong. Jackson, the owner, testified unequivocally that he received the notice “around 4:00 p. m.” on December 1.
There is not one gleam, glimmer or spark of evidence from which the trial court could find that the written notice was received by Jackson after 4:40 p. m., the time the trial judge found was the time the lien was “filed.”
In brief on application for rehearing counsel says that:
“ . . It is evident that Major Jackson was confused as to the first or the second of December. . . . ”
Jackson, being called as an adverse witness, testified:
“Q. You heard Mr. Mynard testify that he went to your house and talked to you?
“A. Yes, I did.
“Q. Is that correct?
“A. Yes.
“Q. Did you receive anything in the mail from Rawls Warehouse the following day?
“A. The same day.
“Q. The same day you did?
“A. Um, Humm.
“Q. Did you keep what was mailed to you?
“A. Yes.
“Q. Do you have it here?
“A. My attorney has it.
*155 “Q. Do you recall what day you actually received that information from Rawls or what ever it was that they mailed to you?
“A. It was the first of December if I recollect the date.
“Q. Think it was December 1st, 1978. When do you normally pick up your mail or when does your mail normally arrive? Do you pick it up at the post office or does it come to your house?
“A. To my house.
“Q. What time does it normally come to your house?
“A. Late evening.
“Q. What do you mean by late evening? Two o’clock in the afternoon, eight . o’clock at night?
“A. Around four o’clock.
“Q. Around four o’clock in the evening?
“A. Yes.” (Emphasis added.)
If Major Jackson was “confused,” he answered questions to the contrary. When questioned by his own lawyer, Jackson testified:
“Q. Now, when Clem came out there that day he told you they were fixing to do that, right as far as file that lien and the next day you got a copy of the lien is that right? Was ■ it the next day or that afternoon?
“A. That afternoon." (Emphasis add- ■ ed.)
Mechanic’s and materialmen’s liens are established by Code of 1975, Title 35, Chap. 11, Art. 5, Div. 8 [§ 35-11-210]. The claim of one not the original contractor is controlled by § 35-11-218, the pertinent part of which follows:
Every person, except the original contractor, who may wish to avail himself of the provisions of this division, shall before filing his statement in the office of the judge of probate, give notice in writing to the owner or proprietor, or his agent, that he- claims a lien on such building or improvement, setting forth the amount thereof, for what, and from whom it is owing; and after such notice, any unpaid balance in the hands of the owner or proprietor shall be held subject to such lien. .
A materialmen’s lien did not exist at common law. Thus its enforcement depends upon strict compliance with the enabling statutes’ substantial requirements. Gray v. McKinley, 34 Ala.App. 630, 632-3, 43 So.2d 421 (1949); see also Snellings Lumber Co. v. Porter, 225 Ala. 164, 142 So. 560 (1932); Rayborn v. Housing Authority of Washington Co., 276 Ala. 498, 164 So.2d 494 (1964), and Le Grand v. Hubbard, 216 Ala. 164, 112 So. 826 (1927). The written notice requirement contained in these provisions is intended for the protection of the owner, Le Grand, supra, and the terms of the statute are explicit, imperative and mandatory. Gray v. McKinley, supra, 34 Ala.App. at 633, 43 So.2d 421.
The trial court correctly interpreted the lien statute to require written notice to the owner prior to the filing of the lien even though I would point out the owner was personally told not to pay out the money. That court, however, inadvertently misapplied the undisputed evidence on the receipt of the required statutory notice. There was clear evidence that the lien itself was “filed” at 4:40 p. m. on December 1, 1978. The only evidence on the actual receipt of written notice by the owner was- by the owner himself who testified that he received it aroujid 4:00 p. m. on December 1, that is, before the lien was “filed.” That evidence satisfied the statutory requirement to establish the lien.
I respectfully dissent.