**In re BURTON CHURCH BUILDING CO., INC., Debtor.**

**Bankruptcy No. 82–06777 (7).**

United States Bankruptcy Court, N.D. Alabama.

Sept. 30, 1985.

Thomas J. Knight, Anniston, Ala., for trustee.

Michael Landers, Sylacauga, Ala., for Oak Grove.

James Sizemore, Sylacauga, Ala., for Jones.

Reuben Bell, Sylacauga, Ala., for Conn.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

L. CHANDLER WATSON, Jr., Bankruptcy Judge.

*Introduction—*

On November 16, 1982, Burton Church Building, Inc. (hereinafter referred to as the debtor), commenced its bankruptcy case by the filing of a petition under chapter 7, title 11, United States Code.

The bankruptcy trustee in the above-styled case filed an objection to the proofs of secured claims of Conn Ready Mix Concrete Company, Inc. (hereinafter referred to as Conn) and of Ottis M. Jones, d/b/a Jones Glass Company (hereinafter referred to as Jones), alleging that the claims of Conn and Jones were unsecured claims. A hearing was held on the objection to the claims of Conn and Jones and the parties agreed to submit the matter to the Court on stipulations of fact.

With respect to Conn the parties stipulated to the existence of the following facts:

Conn Ready Mix Concrete Co., Inc., furnished materials on the town hall project of the town of Oak Grove during the period from June 1982 thru Sept. 1982, for the general contractor, [Burton] Church Building Company, of the value of $2619.24, which was the agreed price therefor. On or before Nov. 15, 1982 the town of Oak Grove received notice and knowledge that Conn made this claim and claimed a lien on funds owed by this town to its contractor. At this time this town owed its contractor $9356.82, which has been paid to the trustee in this proceeding. Conn has not been paid.

Conn filed its proof of claim on February 14, 1983, in the total amount of $4,900.32 and asserted that $2,619.24 of the claim was secured by a materialman's lien on proceeds due the debtor, as general contractor, from the Town of Oak Grove. Attached to the proof of claim of Conn was a letter dated November 15, 1982, from the attorney for Conn to the attorney for the town of Oak Grove, claiming a lien on moneys due the debtor by the town.

With respect to Jones the parties stipulated to the existence of the following facts:

Ottice M. Jones d/b/a Jones Glass Company, furnished materials and labor on the town hall project of the town of Oak Grove during the period from June 1982 until September 13, 1982, for the general contractor, Burton Church Building Co., Inc., of the value of $1125.00 which was the agreed price therefor. On or before November 9, 1982, the town of Oak Grove received written notice and knowledge that this claimant made this claim and claimed a lien on funds owed by the town of Oak Grove to its contractor. At the time of such notice the town of Oak Grove owed its contractor $9356.82 which has subsequently been paid to the trustee in this proceeding. This claimant has not been paid.

Jones filed his "amended" proof of claim on January 11, 1983 [no initial proof of claim appears in the file], in the amount of

$1,125.00, plus interest from September 13, 1982, asserting that the entire amount was secured by a materialman's lien on amounts due the debtor by the town of Oak Grove. Attached to the proof of claim of Jones is a mechanic's lien statement executed November 3, 1982, by O.M. Jones, d/b/a Jones Glass Company, claiming a lien only on certain real property in Talladega County, Alabama, purportedly owned by the town of Oak Grove. The lien statement of Jones was apparently recorded at Mechanic's Lien Volume 4, Page 305, in the office of the Probate Judge of Talladega, Alabama.

*Findings of Fact—*

Because this case is before the Court on the trustee's objections to the respective claims of Conn and Jones, the contents of their proofs of claim are necessarily before the Court, and, *a fortiori*, the Court takes judicial notice of such contents and of their being (and when) filed in this case. The contents of these proofs of claim and the two stipulations of fact constitute the body of evidence upon which these contested matters rest, and the bankruptcy judge finds the facts to be as stipulated by the parties and as stated above concerning the proofs of claim.

The essential facts in this contested matter may be stated, and are found, as follows:

1. Conn and Jones furnished building materials for a construction project, whereby the debtor was to erect improvements for a municipal corporation upon a real property lot belonging to it;

2. The debtor having failed to pay either materialman the debts which arose in their favor, they gave written notice of these elementary facts to the municipality, which still retained funds due the debtor on the construction contract in an amount sufficient to satisfy both claims;

3. Within three months after the last materials were furnished and after the notices to the property owner, the debtor filed for bankruptcy;

4. Upon demand, the property owner paid the sum due the debtor to the trustee of the debtor's bankruptcy estate;

5. Proof of Conn's claim was filed between four and five months after the last material was furnished by it;

6. After filing a materialman's lien statement in the office of the probate judge of the county where the real property was located, Jones filed proof of his claim between three and four months after furnishing the last of the material which he furnished for the project; and

7. The maturity of the debts due these materialmen occurred on the date of delivery of the last material, as to each.

*Conclusions of Law—*

The objection by the bankruptcy trustee to each claim is directed solely to its alleged secured status. To a certain extent, the hearing on the objection is a hearing under 11 U.S.C. § 506(a)—for determination of secured status of an allowed claim.[1] Whether the Bankruptcy Rules directed that this matter be presented to the Court as an adversary proceeding, upon a complaint to have determined the validity of a lien,[2] was not an issue raised, and the Court elects to pretermit its consideration.

A determination of whether either of these claims is secured depends upon whether it was coupled with a lien upon the debt owed by the property owner to the debtor at the time of filing of the latter's bankruptcy petition.

In the terminology of the bankruptcy statute, a "creditor," ordinarily is one who "has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor."[3] The filing of this

---

1. Section 506(a) provides, in part, that the "allowed claim of a creditor secured on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property...."

2. 1973 Bankr.Rules 701(2) and 703; 1983 Bankr.Rules 7001(2) and 7003.

3. 11 U.S.C. § 101(9)(A).

debtor's voluntary petition commenced this voluntary case, which constituted the "order for relief" under said chapter 7.[4] A "creditor" may file a timely proof of claim,[5] and it is deemed "allowed" unless an objection is made.[6] If an objection is made to the validity of the claim or to the amount claimed, the Court is required to determine the issue "as of the date of the filing of the petition." [7]

In these contested matters, where the objections are not to the validity or amounts of the claims but are to their alleged secured status, the determination of the issue of secured status is also to be made as of the time of the filing of the debtor's bankruptcy petition. This alleged secured status is to be determined against the rights of the bankruptcy trustee, who has "as of the commencement of the case, ... the rights and powers of ... a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained [such] a judicial lien...." [8] The term "judicial lien" includes a lien obtained by "legal ... process." [9]

At the commencement of this case, Conn and Jones each held a consumate materialman's lien against the unpaid balance due by the owner to the debtor, upon the construction contract. Such lien related back to the time or times when materials were furnished for the construction project. When the case commenced, the rights of the trustee to the unpaid balance due the debtor on the construction contract—beyond the right to have the debt paid to the trustee as an asset of the estate—were those, under 11 U.S.C. § 544(a), of a judgment creditor of the debtor, with a lien upon the balance due the debtor by virtue of having obtained service upon the property owner of a writ of garnishment issued in aid of collection of the judgment.

The question then is who wins in such case. It is a question of State law. Unless some further consideration favors the trustee, the question of priority as between the holders of materialmen's liens and a garnisheeing judgment creditor of the building contractor has been decided unfavorably to the position of the trustee.[10]

The conclusion that Conn and Jones held *consummate liens* upon the debt owed to the debtor rests upon the Alabama statutes giving liens to "Mechanics and Materialmen," [11] but the conclusion is not readily discernable from these statutes. It appears that the statutes were crafted with little or no thought to the circumstances here, where the property owner is a municipal corporation, and the statutes fit the case here no more appropriately than a pair of trousers on a three-legged stool.

These statutes begin with *Code of Alabama* § 35–11–210 (1975), which, as to persons furnishing materials to a contractor, declares a lien in their favor on the building or improvements and on the land, to the extent of the amount of any unpaid balance due the contractor by the owner, and also on such unpaid balance, "upon complying with the provisions of this division."

Prominent "provisions of this division" to be complied with are set forth in § 35–11–213, which states that it shall be the "duty" of the person entitled to the lien to file a verified statement "in the office of the judge of probate of the county in which the *property upon which the lien is sought to be established is* situated." [Emphasis added.] This section plainly states that

4. 11 U.S.C. § 301.

5. 11 U.S.C. § 501.

6. 11 U.S.C. § 502(a).

7. 11 U.S.C. § 502(b).

8. 11 U.S.C. § 544(a).

9. U.S.C. § 101(27) [now(30)].

10. *LeGrand v. Hubbard,* 216 Ala. 164, 112 So. 826 (1927); Ala.Code § 35–11–228 (1975).

11. Ala.Code title 35, chap. 11, art. 5, div. 8 (1975).

"[u]nless such statement is so filed the lien shall be lost."

A second group of provisions is found in § 35–11–218, which requires a materialman to give notice in writing to the property owner that a lien is claimed "on such building or improvement, setting forth the amount thereof, for what, and from whom it is owing; and after such notice, any unpaid balance in the hands of the owner ... shall be held subject to such lien." As to sequence, this section requires that the notice be given to the owner by the materialman "before filing his statement in the office of the judge of probate."

The Alabama statutes contain two time constraints. Section 35–11–215, requires that the lien statement, when filed by a materialman, must be filed for record "within four months after ... the last item of any material ... has been furnished...." Section 35–11–221, states that an "action for the enforcement of the lien declared in this division must be commenced within six months after the maturity of the entire indebtedness secured thereby...."

The latter section applies only to actions against the property owner and not to litigation between competing encumbrancers and lien holders.[12] It, therefore, is a limitation on a particular type of civil action and is neither a lien-perfection provision nor a lien-termination provision.

Aside from questions relating to bringing an action to enforce a materialman's lien, we see that, *in the ordinary case*, an unpaid materialman has an inchoate lien on the real property of not more than the unpaid balance due from the owner to the building contractor and, also, on such unpaid balance. In sequence, the materialman then is required (1) to give notice to the property owner of the lien claimed and (2) to file in the appropriate probate judge's office the lien statement specified in § 35–11–213. That section, as noted, states that the lien is lost unless the lien statement is

filed in the probate judge's office, and § 35–11–215, which provides the four-month period during which the lien statement may be filed, directs that the lien "shall be deemed lost unless the statement" is filed during the time specified.

From the foregoing, a quite reasonable conclusion—in the ordinary case—would be that § 35–11–210 creates an inchoate or unperfected lien on both the real property and the unpaid balance due the contractor from the owner, in favor of an unpaid materialman, which becomes a consumate or perfected lien on both the land and the debt due the contractor, if—but only if—(1) the materialman gives the required notice to the property owner and (2) the materialman files for record the lien statement. It seems fairly obvious that the creation of the materialman's lien is a drastic change from the "Common Law" on the subject, and it would follow that the statutes would be strictly construed and that strict compliance would be required for creation and perfection of the lien. The problem with that simplistic view is that the Supreme Court of Alabama has, in one not ordinary case, held otherwise.

In *Martin v. Holtville High School Bldg.*,[13] it was held that an unpaid materialman, in order to have an enforceable lien on the balance due the building contractor in that case, was not required to comply with the primary step stated in the statutes—that of giving written notice of the lien to the owner. Why? Because the property owner *knew* that the contractor was indebted to the materialman for materials used in the erection of the school building in question, and the materialman had instituted the lien suit before payment by the owner of the balance due the contractor.

In that case, as in the case before this Court, the real property was *public property*. In the present case, the owner is a municipality; there, it was a board of edu-

---

12. *See Pilcher v. Porter Co.*, 208 Ala. 202, 94 So. 72 (1922).

13. 226 Ala. 45, 145 So. 491 (1933).

cation. This is the element which makes the instant case *not the ordinary* case.

Speaking for the Supreme Court of Alabama in the *Martin* case, *supra,* Justice Brown addressed the matter of the materialman's failure to give the statutorily-prescribed notice to the property owner, stating:

> While it must be conceded, as a general proposition, that strict compliance with the statute in every respect is essential to the rights which it gives, yet it is also well settled that the law never requires the doing of a useless act, and it cannot be assumed that the Legislature so intended in the enactment of this section as a part of the law.
>
> ...[T]he notice required by section 8840 of the Code [Code of 1923; now, § 35–11–218, Code of 1975] could serve no purpose, and to give it would be a wholly useless performance.[14]

In the *Martin* case, *supra,* Justice Brown also addressed the effect of the lien statute when the property owner is a public entity, such as the school board there and the municipal corporation here:

> It is well settled that public buildings and the lands upon which they are situated, the title to which is in the state or its governmental agencies, and dedicated to public and governmental purposes, are not subject to sale under the provisions of section 8832 et seq. of the Code [Code of 1923; now § 35–11–210, Code of 1975], at the suit of mechanics or materialmen for work and material furnished in the construction of such buildings....
>
> The statute, however, gives to the employees of a contractor or persons furnishing materials to him a lien to the extent of any unpaid balance due the contractor by the owner. Code 1923, § 8832. And the lien on such unpaid balance may be enforced by a court of equity....[15]

In the *Martin* case, *supra,* the Alabama Court held that the giving of the statutory notice of the lien to the owner who already knew of the materialman's claim would have been a useless act and was not required. It could, as well, have said that the filing of the statutory lien notice in the Probate Judge's office would have been a useless act and was not required, because there, as here, it was not the ordinary case where the lien is created against both the land and the balance due the building contractor. There, as here, the land was owned by a governmental entity, as to whose land, no such lien could attach. There, as here, the lien could attach only to the balance due from the property owner to the building contractor. Although, the Alabama Supreme Court could have said that the filing of the statutory lien statement, also, was not required, it did not say that. In the case before it, the materialman had already filed the statement,[16] and such an exposition by the court was unnecessary to the decision in that case.

In the present matter, it is necessary to the Court's decision to say that. Unlike, in the *Martin* case, *supra,* both Conn and Jones gave a written notice (of the lien claimed) to the municipality, and Jones filed the specified lien statement, within the time permitted, in the probate judge's office. There is no evidence before the Court that Conn filed a lien statement for record. To have done so would have been a useless act, for no materialman's lien could attach to the municipally-owned property which was the subject of the "town hall project" here. The lien statement is solely related to a lien on the building and land and to require filing of a lien statement here would be to require a useless act—one not intended by the Legislature.

No one, of course, can be sure how the Alabama high court would decide this question if the question were directly presented to it and an answer were required. As far as is known to the bankruptcy judge no such decision by it exists, but the case at hand demands a decision. Because there is

---

**14.** 226 Ala. 45, 46, 145 So. 491 (1933).

**15.** *Id.*

**16.** *Id.*

no North Star visible here, except the words of Justice Brown, speaking for the Alabama Supreme Court, in the *Martin* case, *supra*, the bankruptcy judge has examined closely the statute which provides for the filing of the lien and which says that "[u]nless such statement is so filed the lien shall be lost."

Section 35–11–213, as to the latter provision, can appropriately be paraphrased to say that the lien on real estate [the ordinary case] shall be lost unless the lien statement is filed in the probate judge's office for the county in which the real estate is located. The probate judge's office in an Alabama county will be the place where the mortgages and deeds relating to real property have been filed for public record, as well as the judgment and income tax liens. The statute calls for the materialman's lien statement to describe "the property on which the lien is claimed in such manner that same may be located." If the property is located in a city or town, the statute makes the statement sufficient, if it gives a "house number, name of street, and name of city or town." The name of the owner is required. The statute contains a form which "shall be deemed sufficient." It recites that the lien is claimed on property "situated in _____ County, Alabama." It further recites that the "lien is claimed, separately and severally, as to both the buildings and improvements thereon, and the said land." Not one reference is made to claiming the lien also against the unpaid balance due the building contractor. Yet, an uninsured-against destruction of the improvements might compel the unpaid materialman to look solely to the sum due the contractor, as is the case here, where no such lien attached to the public property. The two arms of the materialman's lien certainly have a distinct and separate reach and identity. It is evident that the filing of the lien statement for public record is an act of perfection of the materialman's lien upon real estate but not of the lien upon the balance due the contractor. Sight should not be lost of the fact that, if the property owner in the instant case had not been a governmental entity, the filing of a lien statement would have perfected the lien upon real property of the owner—not real property of the debtor (contractor) or any real property of this bankruptcy estate, which the trustee represents.

Turning back to the rights of these lien holders against the rights of the bankruptcy trustee, the rights of Conn and Jones attached to the sum due the debtor from the Town of Oak Grove when the materials were furnished for the town hall project from June into September, 1982. Until written notices of the liens were given to Oak Grove, the liens were inchoate. The notices were given by Conn and Jones prior to the debtor's bankruptcy, perfecting the liens and making them consumate and impervious to attack by a judgment creditor with a writ of garnishment served upon Oak Grove. Thus existed the liens of Conn and Jones when bankruptcy ensued and the lien of the trustee upon the balance due the debtor arose, as provided in 11 U.S.C. § 544.

Nothing further was required of Conn or Jones, except to file a proof of claim, which gave notice to the trustee of their claims, including the fact that each asserted a lien against the debtor's "receivable" owed by Oak Grove. When the town paid this sum (which exceeds both claims) to the trustee, the funds remained impressed with the lien rights of the two materialmen.

No action or suit against the property owner for enforcement of the liens became necessary, and the six-month statute of limitations, under § 35–11–221, plays no part here. In any event, 11 U.S.C. § 546(b) provides as follows:

The rights and powers of [the trustee under section 544, 545, or] *a trustee under sections 544, 545, and* 549 of this title are subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection. If such law requires seizure of such property or commencement of an

action to accomplish such perfection, and such property has not been seized or such action has not been commenced before the date of the filing of the petition, such interest in such property shall be perfected by notice within the time fixed by such law for such seizure or commencement.

As previously mentioned, the filing of the proofs of claim constituted notice to the trustee. If § 546(b) means notice to the property owner, Conn and Jones had already given notice to the Town of Oak Grove. The proofs of claim had been filed within four and one-half months after the last materials were furnished, and notices to the owner were given prior to the bankruptcy.

One further arrow in the trustee's quiver possibly should be mentioned. In 11 U.S.C. § 545, it is provided that, under stated circumstances, the trustee may avoid the fixing upon the debtor's property of a "statutory lien"—a term defined in 11 U.S.C. § 101(39) [Now (45)]. Such a lien may be avoided if "not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser," purchasing at the time of such commencement. Since the liens of Conn and Jones against the sum due the debtor were perfected under the Alabama lien statutes, at the time of commencement of the bankruptcy case, an innocent purchaser from the debtor of the contract balance would have taken the account subject to the materialmen's liens.

### Order by the Court

In view of the foregoing, it is ORDERED by the Court that each of the two creditors is adjudged to hold a claim against this bankruptcy estate for the principal sum claimed to be secured, plus interest thereon at the Alabama statutory rate of six percent per annum from October 1, 1982, as to Conn, and from September 13, 1982, as to Jones, to the date of payment by the trustee, except that if the trustee has placed in an interest-bearing account the funds paid over by the Town of Oak Grove and at a rate higher than said six-percent rate for

any part or parts of such time, the interest on said claims shall be at the higher rate or rates for the time to which each higher rate is applicable, that each such allowed claim is adjudged to be secured by the funds paid to the trustee by the Town of Oak Grove, that the trustee's objection is overruled as to each of these claims, and that a copy of this order shall be sent through the United States mails to each of the following (which shall be sufficient service and notice hereof): the trustee, his attorney, the two creditors, their attorneys, the debtor's attorney, the attorney for the Town of Oak Grove, and the United States trustee.