612 So.2d 1172 (1992)
Miles T. CLEMENTS, Jr., and Mary S. Clements
v.
MISSISSIPPI VALLEY TITLE INSURANCE COMPANY and Richard Chesnut.
1911230.
Supreme Court of Alabama.
December 18, 1992.
Robert L. Gonce of Gonce, Young & Westbrook, Florence, for appellants.
Aubrey O. Lammons of Lammons and Bell, Huntsville, for appellees.
MADDOX, Justice.
The basic issue is whether a title insurance company was liable under the terms of a title policy to pay for mechanics' and materialmen's liens filed after the closing of the loan relating to the purchase of a home, when the policy language specifically excluded from coverage "any lien, or right to a lien, for services, labor or material heretofore or hereafter furnished, imposed by law and not shown by the public records."
The purchasers of a home, Miles T. and Mary S. Clements, sued Mississippi Valley Title Insurance Company and attorney Richard Chesnut, alleging breach of contract and fraud. They alleged that the defendants failed to provide title insurance to protect them from mechanics' and materialmen's liens placed on their house after the general contractor had left town without paying all of the subcontractors. The Clementses also included an additional claim against Chesnut, an attorney and agent for Mississippi Valley, under the Legal Services Liability Act. The trial court entered a summary judgment in favor of Mississippi Valley, and made that judgment final pursuant to Rule 54(b), Ala.R.Civ.P. The Clementses appeal; we affirm.

*1173 FACTS
On June 13, 1988, the Clementses entered into a contract for the construction of a house on a lot in Governors Bend subdivision in Huntsville, Alabama. The seller was Dick Simmons, d/b/a Lifestyle Custom Homes. The contract was what is commonly described as a "conventional loan" contract. The form of the contract was provided by the Huntsville Board of Realtors. One of the clauses in the contract stated the following:
"The Seller will furnish the Purchaser a good and merchantable title and General Warranty Deed and an owner's title insurance policy insuring that the property is free from any and all encumbrances except current ad valorem taxes, existing restrictions, easements of record, applicable zoning ordinances, any liens or encumbrances assumed or incurred in this transaction and such state of facts as would be disclosed by an accurate survey of the premises...."
(Emphasis added.)
The Clementses, through their real estate agent, employed Richard Chesnut to perform the closing of the contract. Chesnut was invested with authority from Mississippi Valley to issue title insurance policies, but was not authorized to give legal advice as an agent of Mississippi Valley. On January 24, 1989, the closing date, Chesnut issued an owner's title insurance policy from Mississippi Valley to the Clementses. This owner's title policy was on the standardized form approved by the American Land Title Association (ALTA), which was used by all ALTA members in Alabama at that time. The owner's title insurance policy excluded coverage of
"any lien, or right to a lien, for services, labor or material heretofore or hereafter furnished, imposed by law and not shown by the public records."
Thus, the owner's title insurance policy excluded any mechanics' or materialmen's liens for "labor or material heretofore ... furnished ... and not shown by the public records." Chesnut collected a premium from Simmons in the amount of $1,194.50, as provided for in the construction contract. He was to receive a commission from Mississippi Valley of 60% of that amount. Chestnut did not reveal to the Clementses that he was an agent for Mississippi Valley or that he would receive a commission from that company. Chestnut also issued a standard lender's title insurance policy insuring AmSouth Mortgage Company, the mortgagee. The mortgagee's standard policy covered mechanics' and materialmen's liens.
Chestnut testified that, as of January 24, 1989, there were no liens, whether mechanics', materialmen's, or otherwise, on the subject property, and that title to the subject property was good and merchantable, but evidence presented in opposition to Mississippi Valley's motion for summary judgment indicated that, at closing, Simmons informed Chesnut that certain subcontractors had not been paid, but that he would pay them. Simmons signed a lien waiver in order to facilitate the closing, but no lien waivers were obtained from the materialmen.
After closing, the seller, Simmons, failed to pay money due subcontractors and suppliers. Miles Clements testified that he received notice of mechanics' liens on the property in March 1989, two months after the owner's title insurance policy had been issued. Subsequently, lien claimants filed actions against the Clementses, but Mississippi Valley refused to defend against them and refused to pay the liens, on the grounds that the liens were not of record when it issued the policy and that the policy did not cover the liens. The Clementses suffered judgments against them totalling approximately $20,000 in the actions filed by the lien claimants, and they also had to provide their own defense.

I
In January 23, 1991, the Clementses sued Mississippi Valley and Chesnut in the Circuit Court of Madison County, Alabama. The complaint, after amendment, claimed breach of contract, fraud, fraud in the inception (promissory fraud), fraud by suppression of material facts, and as mentioned earlier in this opinion, included an additional claim against Chestnut under the Legal Services Liability Act. The defendants *1174 filed motions for a summary judgment.
After a hearing on the motions for summary judgment and other pending motions, the trial court granted defendant Mississippi Valley's motion for summary judgment and entered for Mississippi Valley a final judgment on all claims and made that summary judgment final under Rule 54(b), Ala.R.Civ.P. The trial court also granted defendant Chestnut's motion for summary judgment on all claims except the claim under the Legal Services Liability Act. This claim is still pending in the trial court. The court denied the Clementses' motion for partial summary judgment. The Clementses then appealed.

II
The rules regarding summary judgments have been stated many times. The summary judgment was proper in this case only if there was no genuine issue of material fact and Mississippi Valley was entitled to a judgment as a matter of law. Rule 56, A.R.Civ.P. The burden was on Mississippi Valley to make a prima facie showing that no genuine issue of material fact existed and that it was entitled to a judgment as a matter of law. The burdens placed on the moving party by Rule 56 have often been discussed by this Court:
"`The burden is on one moving for summary judgment to demonstrate that no genuine issue of material fact is left for consideration by the jury. The burden does not shift to the opposing party to establish a genuine issue of material fact until the moving party has made a prima facie showing that there is no such issue of material fact. Woodham v. Nationwide Life Ins. Co., 349 So.2d 1110 (Ala.1977); Shades Ridge Holding Co. v. Cobbs, Allen & Hall Mortg. Co., 390 So.2d 601 (Ala.1980); Fulton v. Advertiser Co., 388 So.2d 533 (Ala.1980).'"
Berner v. Caldwell, 543 So.2d 686, 688 (Ala.1989) (quoting Schoen v. Gulledge, 481 So.2d 1094 (Ala. 1985)). If that showing was made, then the burden shifted to the plaintiffs to present evidence creating a genuine issue of material fact, so as to avoid the entry of a judgment against them. DuPont v. Yellow Cab Co. of Birmingham, Inc., 565 So.2d 190 (Ala.1990).
The standard of review applicable to a summary judgment is the same as the standard for granting the motion, that is, we must determine whether there was a genuine issue of material fact and, if not, whether Mississippi Valley was entitled to a judgment as a matter of law. Our review is further subject to the caveat that this Court must review the record in a light most favorable to the Clementses and resolve all reasonable doubts against Mississippi Valley, the movant. Wilson v. Brown, 496 So.2d 756, 758 (Ala.1986); Harrell v. Reynolds Metals Co., 495 So.2d 1381 (Ala.1986). See also Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala.1990).
Because this action was not pending on June 11, 1987, Ala.Code 1975, § 12-21-12, mandates that the Clementses meet their burden by "substantial evidence." Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989). Under the substantial evidence test the nonmovant must present "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).

III
The Clementses first argue that the summary judgment was improper on their breach of contract claim. To answer that, we must determine whether, as a matter of law, Mississippi Valley, by its use of the language quoted from the policy, excluded from its coverage any defects in the title that were not of record as of the date of closing.
Under the terms of the building contract, Simmons agreed to build the house, according to plans selected by the Clementses, on a particular lot in Governors Bend. It is a matter of common knowledge that the building of a house usually requires the hiring of subcontractors, the purchase of materials, and the payment of workers.
*1175 Section 35-11-210, Ala.Code 1975, declares that every mechanic and materialman can perfect a statutory lien on property, provided, of course, the statutory requirements are followed. In this case, those requirements were met. Even though there was evidence that Simmons told Chesnut that the materialmen had not been paid, it is not disputed that he left town still owing several of the subcontractors and businesses that had supplied materials for the construction of the Clementses' house.
The general policy of § 35-11-210 is to secure to the materialmen and the laborers just payment for their material and labor, and it is based upon the general equitable principle that one should not enjoy a benefit without making just compensation for it. LeGrand v. Hubbard, 216 Ala. 164, 112 So. 826 (1927).
The contract provides that "[t]he Seller will furnish the Purchaser a good and merchantable title and General Warranty Deed and an owner's title insurance policy insuring that the property is free from any and all encumbrances except current ad valorem taxes, existing restrictions, easements of record, applicable zoning ordinances, any liens or encumbrances assumed or incurred in this transaction and such state of facts as would be disclosed by an accurate survey of the premises...." Thus, the contract excludes all liens and encumbrances that arise out of the performance of the contract. The record contains evidence that the Clementses had knowledge of the nature of the contract to be performed. Mr. Clements testified to the following:
"Q. At the time you signed this contact on June 13, 1988, what was the status of the construction of the house?
"A. There was no construction at that point. It was just a vacant lot. We brought house plans down from New Jersey and I talked with Dick Simmons and he agreed to build the house there on the lot.
"Q. Did Dick Simmons own the lot at that time?
"A. I don't know if he owned it on the date that we signed that, but I know that he subsequently or at some point bought the lot from Dennis Clowers.
"Q. So Clowers owned the subdivision and he sold a lot to Simmons and Simmons agreed to build a house for you to your specifications?
"A. That is correct."
Any liens or encumbrances incurred during the performance of the contract were to be excluded from coverage by the owner's title policy the seller was to provide. We agree with the trial court that the summary judgment was appropriate, because the policy issued fulfilled the requirements of the contract. In short, Mississippi Valley's issuing agent, Chesnut, issued an owner's title insurance policy that the contract required Simmons to provide for the Clementses.
The fact that the Clementses put a different interpretation on the contract is not significant insofar as their legal rights are concerned. The Clementses admit that they never asked anyone whether the policy would cover mechanics' or materialmen's liens. They never discussed the policy with anyone before the deputy sheriff served them with a lien in late March 1989, two months after the closing on the loan. Mr. Clements testified:
"Q. And this contract does call for the issuance of owner's title insurance. Would you agree with that?
"A. I don't know.
"Q. All right, sir.
"A. It probably does. It says, `Seller will furnish general warranty deed and owner's title insurance policy.'
"Q. My question to you is this: Was that discussed with you by your real estate agent? Was that brought up?
"A. I don't recall that. I do recall that I required an owner's policy when I bought the house. I don't recall that being in a document.
"Q. You required that of your real estate agentyou passed that on to them?
"A. No.
"Q. Oh, you didn't? You don't recall discussing it with your agent. Is that what you are telling me?
*1176 "A. I don't recall discussing that with the agent.
"....
"Q. Mr. Clements, when was the first time youwe are talking of course about the house on Governors Bend now.
"A. Right.
"Q. When was the first time that you recall the subject of title insurance coming up with anybody that was involved in this transaction?
"A. It must have been when the sheriff knocked on my door issuing me a mechanic's lien from one of the people who were suing me.
"Q. Do you recall approximately when that was, your best recollection?
"A. Approximately March of '89.
"Q. Somewhere around two months after you purchased the home?
"A. Yes. It could have been in late February.
"Q. So actually you had not discussed the title insurance coverage with anyone prior to that?
"A. Not the coverage, no. I simply asked for an owner's title policy. I thought I got that."
We find, based on this testimony, that the trial court did not err in holding, as a matter of law, that the plaintiffs were not entitled to relief on their contract claim. In short, in view of this evidence, the trial court had to conclude that the plaintiffs contracted only for an owner's title insurance policy, and that they never specifically requested a policy that would include coverage for mechanics' or materialmen's liens (i.e., a policy that would insure, or protect them, against the contractor's failing to pay all materialmen) incurred during construction and not satisfied prior to closing. All the testimony presented to the trial court also reflects that the policy issued is the only type of owner's title policy then available in Alabama, and the Clementses do not refute this testimony.

IV
The Clementses next argue that summary judgment was improper on their fraud claims. Based on the same reasoning we set out regarding the contract claim, we also hold that the trial court properly entered the summary judgment on the fraud claim. The evidence presented shows that there was no obligation to provide an owner's policy including mechanics' and materialmen's liens and that there was no misrepresentation about what the policy excluded, either intentionally, recklessly or otherwise. We have not been directed to any evidence indicating that the Clementses ever expressed a desire for a policy that did not exclude mechanics' and materialmen's liens. Mississippi Valley and Chesnut could not have known they had a duty to provide such a policy; in fact, the evidence, as we have shown, shows that they had no such duty.
Although there is some evidence that the Clementses assumed that the policy would cover these liens, there is no substantial evidence that Mississippi Valley made any misrepresentation that the policy would cover them.
Based on the foregoing, we hold that the trial court properly entered the summary judgment in favor of Mississippi Valley Title Insurance Company. The judgment, therefore, is affirmed.
AFFIRMED.
HOUSTON, STEAGALL, KENNEDY and INGRAM, JJ., concur.
HORNSBY, C.J., and SHORES, J., dissent.
SHORES, Justice (dissenting).
Under these facts, I believe Mississippi Valley Title Insurance Company, through its agent, Richard Chesnut, had a duty to disclose to the Clementses that there were materialmen who had not been paid (a fact known to Chesnut, who was the agent of Mississippi Valley), and that the policy Chesnut was issuing to the Clementses contained a provision excluding coverage of those claims. I also believe that Chesnut had a duty to inform the Clementses that the policy he was issuing to AmSouth Mortgage Company on behalf of Mississippi Valley did not contain that exclusion.
This Court has traditionally recognized a duty to disclose where one party has some *1177 particular knowledge or experience not shared by the opposite party. Lucas v. Hodges, 589 So.2d 154 (Ala. 1991).
At the closing here, everybody in the room, except the Clementses, knew that there were outstanding debts owed by the seller to subcontractors, and knew that the Clementses would be liable for liens filed against the property after the closing, but failed to tell them that the policy about to be issued would exclude coverage for those very liens. Mississippi Valley and its attorney agent had a duty to disclose those facts. Stafford v. Mississippi Valley Title Insurance Co., 569 So.2d 720 (Ala.1990).
HORNSBY, C.J., concurs.